## No. 11,575.

### MILLER v. FARMERS BANK AND TRUST CO.

Decided October 3, 1927.

Action against bank for alleged balance due on accounts. Judgment for defendant.

#### *Affirmed.*

1. ACTIONS—*Dishonest Theory.* A suit predicated upon a theory that is contrary to common honesty has no standing in court.

2. HUSBAND AND WIFE—*Banking—Checking Account.* A husband may not accept the benefit of bank deposits made by his wife and reject detriments in the way of checks drawn by her on the account.

3.  TRIAL—*Directed Verdict.* Where the evidence is such that if a verdict should be returned for plaintiff the court ought to set it aside, a verdict should be directed for defendant.

4.  PLEDGES—*Assignment.* As between the pledgee of a promissory note and a subsequent assignee, the former has the better title.

*Error to the District Court of Larimer County, Hon. Robert G. Smith, Judge.*

Mr. THOMAS H. GIBSON, for plaintiff in error.

Mr. PAUL W. LEE, Mr. GEORGE H. SHAW, Mr. WALTER E. BLISS, for defendant in error.

*Department Two.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE names of the parties appear here in the same order as at the trial. We shall refer to Miller as plaintiff and to the bank as defendant, as there aligned.

The complaint contained three counts: First, to recover a balance claimed by plaintiff in an open checking account in defendant bank; second, for a balance that he claimed in his savings deposits, and third, for alleged conversion of a promissory note. At the close of the evidence, the court granted defendant's motion for a directed verdict, and plaintiff brings the case here for review.

The disputed amounts on the first two causes are included within the period of May 17, 1924, and September 25, 1924. Plaintiff, a customer of the bank, operated a garage business in Fort Collins under the name of "Northern Garage," and at various times sold automobiles of different makes, either as agent, or as salesman on commission. He was frequently away from the city, and left the business with his wife. She not only signed checks, but also made deposits to plaintiff's credit in

the bank. Some of the money so deposited came from the garage and automobile business. Other items of deposit, whether plaintiff's or his wife's, were connected with checks that are now sought to be repudiated by plaintiff, as, for instance, when a car was bought and sold, he claims the proceeds deposited to his credit therefor, but disclaims responsibility for the check given in payment of the wholesale price of the same car.

Plaintiff's general bank account, declared upon in the first count, was kept under the name of "Northern Garage." The balance claimed and sued for on this count was $42,592.60. The savings account, claimed in the second count, was in plaintiff's own name and the balance claimed thereon was $1,039.58, the two making a total of $43,632.18. For all purposes here, we shall treat the first two causes as one, and speak later of the third cause, relating to the note alleged to have been converted. At the trial, plaintiff admitted that $31,858.97 had been applied to the payment of his legitimate bills, but later corrected his testimony and reduced his admission to $29,746.97. He has now modified his original demand on the first cause to an alleged balance thereon of $12,654.63. The court allowed him nothing on any of his claims. Disputed checks of one Abbott were at first involved, but plaintiff having conceded that all of the Abbott checks and some of his wife's checks were applied to the payment of plaintiff's legitimate bills, we therefore limit our discussion about the checks to those issued by the wife. The wife signed some of these checks in her own name, some in the name of her husband, the plaintiff, and some in the name of the garage, but they were all charged to plaintiff's account. Defendant claims that plaintiff's general checking account became overdrawn; that the savings account was applied by the bank on such overdraft, and that nothing was left to plaintiff's credit in either account.

The bank claimed that they were led by the husband and wife to believe that they were business partners,

and that the wife might sign checks for the husband, but they both denied it and joined their testimony at the trial in an attempted repudiation of the wife's authority to sign checks in any amount, or for any purpose, for the Northern Garage, or on her husband's account. Plaintiff left a signature card at the bank, with his name on it, and without his wife's, but relying on representations alleged to have been made by the husband and wife, the bank honored her signature. Each month the bank sent statements showing amounts of deposits, checks and balances, which included all the disputed items. Plaintiff himself offered some of these statements in evidence, but claimed not to have received them promptly. However, he said that he was home at least once a week, and further said: "I did check up on the stubs of the checks, and saw that the business was running along as it should   *   *   *   I just take the stubs on my check book to see what has been checked out, and I have the deposits; so I keep track that way." He said also, at another trial, that he relied on the bookkeeper and the check book. The bookkeeper filled out the stubs to the checks, so inspected by plaintiff.

Plaintiff also testified on cross-examination: "Q. If the testimony of your wife would disclose the fact, that the $1,263 check, payable to Protective Finance Corporation, dated August 8th, 1924, was written in payment for the Dort car which was later sold to Mr. Shinn, would it still be your position that you would want to recover that $1,263 and also the amount of the Shinn note? A. Yes sir, it would be. Q. That would still be your position? A. Yes sir. Q. That is to say that although you had nothing to do with the Dort car, and wanted to charge the bank with the money that went out of your account to pay for it, yet at the same time, you claim title to the note that was given by the buyer of the same car? A. Yes sir, I do. Q. Now is that your same position with respect to these other transactions? A. It is.

"Q. You objected to the item of $1,800 covered by the check to Don Hogan, Incorporated, on May 16, 1924, did you not? A. I do. Q. On May 24th, 1924, there passed to the credit of your account, the sum of $2,000. What was that $2,000 for? A. For the payment of that car. Q. And on the face of that, it shows you made a profit of $200? A. I don't know if I made a profit of $200 after all the expenses were taken into consideration. Q. Whether you made a profit or not, you want to hold on to the $2,000 that passed to your credit, and you want to repudiate the charge of the $1,800 against your account, do you? A. That check of $2,000 didn't go through the proper course of the bank, or of business. Q. That is your position now, with respect to all these items, is it not? A. It is. Q. And still is your position? A. It is." Other testimony of the plaintiff as to disputed items is of like import.

Defendant pleaded and offered proof of ostensible authority, ratification and the application of the money to the legitimate purposes of plaintiff's business.

The court granted defendant's motion for a directed verdict upon the ground that if a verdict were returned for plaintiff, under the evidence and law of the case, such verdict could not stand. The gist of the court's reason appears to have been, as pointed out by counsel for defendant, that plaintiff did not prove his case, in that independently of all other considerations, and even if the wife did not have the authority claimed for her, and if she used plaintiff's bank account for her private affairs, mixing her own business transactions in plaintiff's bank account, nevertheless in doing so she also deposited her own money with that of plaintiff, and added to his holdings, with the net result that plaintiff was benefited financially and lost nothing, hence has no claim for damages.

As we view the law, under the facts disclosed, the trial court was right. It would be superfluous to discuss all

of the points suggested. We are content to base our decision on the following:

1. Legal technicalities, rightly understood, are to promote, and not to subvert, justice. We remark upon the following from section 84 of the 1921 Code: "The court shall in every stage of an action disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect." This would be the way to get at the merits of the case, even if the Code had not spoken. Concretely applied, arguments, however subtle, that attempt to convince us that plaintiff should be awarded the full amount of the retail price of an automobile without cost to him, and that the wholesale price must be borne by the defendant bank, which had no interest in the car, are contrary to common honesty. Plaintiff stated his theory without hesitation or abashment, in open court, as to the automobiles and other items, as quoted in our statement of facts, but a suit predicated upon a theory that is contrary to common honesty has no standing in court.

2. Plaintiff cannot accept the benefits and reject the detriments of his wife's alleged unlawful acts. This principle is too well known, and authorities too numerous, to require citations. He cannot "approbate and reprobate" in the same breath.

3. Even if it be conceded that the wife's acts were unauthorized by plaintiff, nevertheless since he suffered no loss, the arithmetical result is that he has no claim for damages.

4. Where the evidence is such that a verdict for the plaintiff ought to be set aside, the court should direct a verdict for the defendant. *Weston v. Livezey,* 45 Colo. 142, 100 Pac. 404.

5. As to the alleged conversion of a promissory note, complained of in the third cause, it related to paper owned by Mrs. Miller, which had been pledged and de-

livered by her to the bank to secure the payment of another note. Plaintiff claims that his wife orally assigned the first note to him, but even so, its prior pledge to the bank gave the pledgee the better right. Counsel for plaintiff omitted abstracting that part of the complaint which relates to the third cause. We had to go to the transcript to ascertain the allegations. We do not believe that plaintiff's counsel took them seriously after the evidence was in. He makes no argument in favor of the third cause of action.

Many of the pertinent facts of the case were elicited from plaintiff and his wife only upon painstaking cross-examination by defendant's counsel, and the trial was prolonged by plaintiff's unwarranted theory as to his rights, as well as by his enormous and unfounded claims in his sworn complaint. He at first demanded an amount closely approaching the sum of all deposits to his credit during the time in question, without allowance for legitimate items on the other side of the ledger. When confronted with the evidence, he withdrew nearly three-fourths of such claims, but his complaint against the bank is wholly lacking in merit, under the evidence disclosed, and for the reasons above stated.

We approve of the action of the trial court in granting defendant's motion for a directed verdict.

Judgment affirmed.

Mr. Justice Denison sitting for Mr. Chief Justice Burke, Mr. Justice Campbell and Mr. Justice Butler concur.