No. 17,720.

CARLETON BRENT, ET AL. *v.* BANK OF AURORA.
(291 P. [2d] 391)

Decided December 5, 1955.

Mr. WILLIAM L. OSTHOFF, for plaintiffs in error.

Messrs. McCOMB, ZARLENGO & MOTT, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the Court.

CARLETON BRENT and Dorothy Brent, husband and wife, as plaintiffs, brought an action against Bank of Aurora, a Colorado corporation, seeking damages in their first claim in the sum of $13,023.94 on account of expenses and damages arising out of injuries sustained by Dorothy in falling on the bank's premises, and in their second claim the sum of $10,000.00 by reason of the death of their minor child resulting from said fall. The cause was tried to a jury, and at the conclusion of plaintiffs' case in chief the court granted defendant's motion for a directed verdict, and judgment of dismissal followed. Plaintiffs are here by writ of error seeking a reversal of the judgment.

The evidence discloses that plaintiffs are husband and wife, residing in Aurora, Colorado, and are depositors in the Bank of Aurora. On the evening of December 11, 1953, shortly after 7 o'clock, plaintiffs, together with their three children, left their home by automobile, five or six blocks from the bank, for the purpose of making a deposit in the bank. On arriving at the bank, plaintiff Carleton Brent, who was driving, attempted to park his automobile in one of the two parking lots maintained

by the bank for the use of those having business therewith, and, finding the space available for his parking was narrow, he stopped prior to parking his car to enable his wife to leave the automobile for the purpose of transacting their intended business. It is undisputed that the wife was pregnant, the length of the pregnancy being about six months. The wife, after alighting from the automobile, waited until her husband parked their car, then proceeded to the rear thereof, stepped on a piece of ice or an icy spot and fell. As a result of injuries she was taken to a hospital and there confined for a period of days, during which her child was born alive, but within a short period of time died. She was obliged to return to the hospital for further treatment, and at the time of the trial had not fully recovered from ailments attributable to her injuries.

The parking lot where the accident occurred had two signs posted on the bank building, reserving the same for the use of its "Customers Only." The only lighting on the parking lot was such as came through windows of the bank building itself and street lights in the proximity thereof. Plaintiff offered a certified copy of the records of the Weather Bureau Airport Station at Denver, Colorado, which shows the climatic conditions on December 10 and 11, which were admitted without objection. The following is a pertinent part thereof:

*"December 10, 1953*
Maximum temperature 48 degrees, minimum temperature 22 degrees. The temperature was above freezing at 12:01 a.m. and did not drop below freezing until 4:00 p.m. Total precipitation was .23 in. and total snowfall was 3.8 in.

| *"Precipitation type* | *Began* | *Ended* |
|---|---|---|
| Light snow showers | 4:33 p.m. | 6:45 p.m. |
| Light snow | 6:45 p.m. | 11:45 p.m. |
| Very light snow | 11:45 p.m. | (Continued until 12:00 a.m. on Dec. 11) |

"There was 1 inch of snow on the ground at 12:01 a.m. on December 10, and during the afternoon and evening another 3.8 in. of snow fell. Total on ground at 11:10 p.m. on December 10, was 4 in.

*"December 11, 1953*

Maximum temperature 28 degrees, minimum temperature 7 degrees. Cloudy with very light snow at 12:01 a.m. but snow ended by 12:50 a.m. and skies cleared rapidly thereafter, with skies nearly clear during daylight hours. Surface winds were southerly during daylight hours, with winds during the morning averaging 10 to 15 miles per hour, and during the afternoon 15 to 20 miles per hour. Precipitation 3″ at Midnight."

It is undisputed that the weather conditions as reported by the Weather Bureau were substantially the same as those in Aurora.

Mrs. Brent's testimony is the only evidence of the existence of any ice whatever in the parking lot at the time of the accident. She testified that there were no defects in the lot itself other than the ice; the only reason for her fall was slipping on ice. She was not asked, nor did she testify, as to the dimensions of the ice or how or when it came to be on the parking lot. Further, she did not see the ice before slipping and falling, stating, however, that the ice causing her fall was not covered with snow.

The pertinent part of Plaintiffs' Summary of the Argument is as follows:

"The trial court erred in directing a verdict in favor of defendant at the close of plaintiffs' case for the reason that plaintiffs' evidence, given its most favorable construction, established the existence of a dangerous, icy condition in defendant's parking lot, *which condition existed for such a period of time prior to plaintiff's fall that could lead reasonable minds to conclude that the defendant, through its officers knew or reasonably should have known of this condition and should have corrected it or warned the plaintiffs of its existence.*

"Notice to the defendant of the condition of its parking lot may have been either actual or constructive. It is acknowledged that plaintiffs did not, *themselves, give notice to the Bank of the condition of the lot, either before or after the fall. Notice of the condition, then, to the Bank, if any, must have been constructive notice.* The evidence showed that the snow fall *which caused the condition in the lot ended more than eighteen hours before plaintiffs' fall.* Plaintiffs urge that whether or not this period of time, *during a business day, is sufficient to charge the defendant with notice of the condition is a question of fact to be resolved by the jury, rather than a question of law for the court."* (Italics ours.)

▮▮ Plaintiffs' counsel prefaces his argument with the statement that the evidence is to be viewed in its best light and is entitled to the most favorable construction that can be given it before the court is entitled to grant a motion for non-suit or directed verdict. Since the decision of this court in *Schwenke v. Union D & R Co.,* 12 Colo. 341, 21 Pac. 43, that rule has been consistently adhered to in this jurisdiction. See *Nelson v. Centennial Cas. Co.,* 130 Colo. 66, 273 P. (2d) 121, wherein it is said:

"* * * Where a trial court, from a review of all the evidence adduced, is convinced that there is no basis upon which a verdict in favor of the plaintiff may be supported and that even though the jury should return a verdict in his favor it could not be permitted to stand, it becomes the duty of the trial court, as a matter of law, to direct a verdict in favor of defendant. Where the trial court in so doing exercises sound judicial discretion, its action is entitled to the same presumption of regularity and validity as is accorded to any other type of judgment. That error may have been committed by the trial court is never presumed, but must affirmatively be made to appear. * * *"

Here plaintiffs rely not upon *actual* but *constructive notice* on the bank's part in order to establish their claim.

It may be said that in order to establish constructive notice on the part of the bank the plaintiffs must clearly and definitely establish that the ice in the parking lot was there long enough, and was of such dangerous character, that the bank, by the exercise of reasonable care, should have discovered and remedied it. It is to be observed that in the first paragraph of Plaintiffs' Summary of the Argument it is stated that plaintiffs' evidence, viewed in its most favorable construction, "* * * established the existence of a dangerous, icy condition in the defendant's parking lot, *which condition existed for such a period of time prior to plaintiff's fall that could lead reasonable minds to conclude that the defendant, through its officers, knew or should have known of the condition and should have corrected it or warned plaintiff of its existence.*" Further, in the second paragraph of the same summary, they say, "The evidence showed that the snow fall *which caused the condition in the lot ended more than eighteen hours before plaintiff's fall.*" There is not a scintilla of evidence to be found in the entire record from which a jury might determine how, when or how long the icy condition of which plaintiffs complain existed. It was incumbent upon plaintiffs to establish by competent evidence that the icy condition of which they complain existed for a time of sufficient duration prior to the accident to enable the jury to determine whether a reasonably prudent man, or in this instance the bank, knew or ought to have known of the condition and to have taken such measures as were necessary to remedy it for the protection of an invitee such as this plaintiff wife.

Plaintiffs' counsel cites *City of Boulder v. Niles,* 9 Colo. 415, 12 Pac. 632, and *Denver v. Wilson,* 81 Colo. 134, 254 Pac. 153, to support his position that in the instant case the bank had constructive notice sufficient to charge it, under the law, with negligence. With counsel's position we cannot agree because in *City of Boulder v. Niles, supra,* it appears that Niles was injured

by slipping and falling on the public sidewalks in the City of Boulder and had judgment for injuries received, which judgment was by this court reversed because of an error in instructions. We find in this decision that an unusually heavy snowstorm began on January 30 and continued for a period of three days, making an accumulated snowfall of about two feet. The accident occurred on a sidewalk where there was an accumulation of snow and ice which the witness testified varied from a foot in height, oval in shape, and about two feet wide at the base, and extended for quite a distance along the sidewalk, while other witnesses testified that the ridge formed by the accumulation of snow and ice was only three or four inches in height and took the shape of a "core" after the snow on either side had been removed. "Upon either side of the ridge the sidewalk had been cleared from snow and ice" and plaintiff's injury occurred on the evening of February 6, at least three full days after the snowstorm had ceased. One of the questions to be determined was whether, under these factual circumstances, the city of Boulder had sufficient notice of the hazardous condition of the sidewalk to warrant a finding that it had constructive notice thereof. With reference thereto it is said:

"It is also to be borne in mind that where the action, as in this case, is based on neglect or omission to keep the sidewalk in a safe condition, that question of notice becomes important. The rule is that notice to the corporation of the defect which caused the injury, or facts from which notice thereof may reasonably be inferred, or proof of circumstances from which it appears that the defect ought to have been known and remedied by it is essential to liability. *The corporation is responsible only for reasonable diligence to repair the defect, or prevent accidents after the unsafe condition of the street is known, or ought to have been known to it, or its officers having authority to act respecting it.*

\* \* \*

"* * * The *fourth instruction* given by the plaintiff is defective in this: That it ignores the question as to whether or not the defendant city used reasonable diligence in the care of its sidewalk. *Notice of the obstruction, or such lapse of time as imports notice, and failure to use reasonable diligence in its removal, were essential conditions of the defendant's liabilty.*

* * *

"If, in point of fact, the proper officers of the city did not know of such obstruction [on the sidewalk], when, by ordinary and due diligence and care, they ought to have known of it and removed it, the defendant must be held responsible as in case of actual notice." (Italics ours.)

The factual situation in the Boulder-Niles case is essentially different from those in the instant case. There was evidence from which reasonably prudent men could have determined that the city had constructive notice of its dangerous sidewalk by reason of the fact that that condition had maintained for a definite period of time, while in the instant case there is not an iota of evidence from which reasonably prudent men could determine that the bank had any notice whatever of the condition of the parking lot of which plaintiffs complain.

In *Denver v. Wilson, supra,* plaintiff had judgment for $4750.00 for personal injuries sustained by her as a result of a fall on the sidewalks in Denver. Denver relied upon two grounds for reversal: 1. Contributory negligence and 2. "That the evidence as a whole establishes defendant was not guilty of negligence." With reference to notice it is said:

"Ordinarily the fact that ice on a sidewalk is merely a slippery condition, unless there is a bunch or projection or a pile of it that makes the walk uneven, and likely, in its very nature, to cause stumbling, does not constitute such negligence on the part of the municipality as to make it liable. But it should be remembered that the accumulation of ice upon this sidewalk for a number of

years, and, as alleged, at the time of this accident, *resulted not from natural causes, but from artificial cause* due to the drainage of water from the adjacent premises through a drainpipe and that the city had never taken any steps whatever, so far as the record shows, to remedy or prevent this condition. Primarily a municipality is not liable for injuries suffered by a pedestrian upon one of its sidewalks because of a defect therein brought about by the action of a third party. Its liability is secondary and arises, if at all, only after it has had a reasonable length of time, *after acquiring knowledge of the defect, to remove the same.* This knowledge may be either actual or constructive. There was testimony here which the jury evidently believed that the identical ice on the sidewalk on which the plaintiff slipped and fell was there for ten days or more, and as a result of an artificial cause, and the city had, or by the exercise of reasonable diligence, should have had knowledge thereof, after the accumulation, to have removed it before this accident occurred." (Italics ours.)

The language used by this court in *F. W. Woolworth Co. v. Peet* 132 Colo. 11, 284 P. (2d) 659, is equally applicable in the instant case. "About all that plaintiffs seemed to have to rely upon was the happening of the accident, and that, by virtue of this happening defendant was negligent. If she is to be supported by this contention, in the total absence of any evidence disclosing liability on the part of the defendant, then we would be holding defendant to be an insurer of the safety of all its customers [depositors] entering the store [bank]. Plaintiffs' case in chief discloses no evidence concerning knowledge on the part of the defendant, or that an unreasonable time had elapsed in which the condition could have been discovered and rectified."

 ■ It should be remembered that according to the report of the Weather Bureau Airport Station, snow ceased to fall at 12:50 A.M. on December 11, 1953, on which day, at about 7 P.M., the accident occurred. The

report further shows that the maximum temperature during the entire day was 28° and the minimum temperature was 7°, so that during the entire period of time on December 11, 1953, the temperature was below the freezing point. Under these conditions and in the absence of any testimony as to time, the ice upon which plaintiff wife testified she fell may have been formed a short period before the accident or it may have been formed sometime during the night of December 10 prior to midnight for, according to the report, the temperature was below the freezing point at midnight on December 10. However this may be, it was incumbent upon plaintiffs to establish by a preponderance of evidence that defendant had constructive notice of the ice on its parking lot in time to have remedied it or to have warned plaintiff wife of its existence. Plaintiffs, in order to recover in this action where constructive notice is relied upon, must establish by competent evidence the following: 1. Plaintiff wife, being defendant's invitee, was injured because of defendant's negligence in permitting ice to accumulate on its parking lot; 2. the condition which occasioned her fall had existed for a sufficient length of time to charge defendant with constructive notice of the dangerous condition, and 3. her damages. Under the evidence here, there is a complete absence of any attempt on plaintiffs' part to warrant either the court or jury in finding constructive notice. Constructive notice in the instant case would have to rest entirely on guess, speculation, surmise or conjecture, rather than upon substantial, competent evidence.

Plaintiffs having failed to establish actionable negligence in the case, it became the duty of the trial court to grant defendant's motion for a directed verdict for as this court announced in *Grand Junction v. Lashmett*, 126 Colo. 256, 247 P. (2d) 909,

"Where the facts are in dispute and the situation is such that reasonable men might draw different conclusions from the evidence, then the case must be submitted

to the jury for determination. Such is the usual procedure. Where, however, as here, the evidence is not in conflict, and there is no dispute as to the facts of the case, the issue on the question of negligence is resolved into one of law for determination by the court. The question before the court then is: Are the facts of this case, undisputed and considered in the light most favorable to plaintiff, sufficient to support her charge of negligence on behalf of the defendant? (citing cases.)"

In the following decisions we find ample authority for the trial court's action in granting defendant's motion for a directed verdict at the conclusion of plaintiffs' evidence: *Home Public Market v. Newrock,* 111 Colo. 428, 142 P. (2d) 272; *Saliman v. Silk,* 118 Colo. 220, 194 P. (2d) 304; *Polz v. Donnelly,* 121 Colo. 95, 213 P. (2d) 385; *Coakley v. Hayes,* 121 Colo. 303, 215 P. (2d) 901; *Grand Junction v. Lashmett, supra; Maloney v. Jussel,* 125 Colo. 125, 241 P. (2d) 862; *Gordon v. Clotsworthy,* 127 Colo. 377, 257 P. (2d) 410; *Denver Dry Goods Co. v. Pender,* 128 Colo. 281, 262 P. (2d) 257; *Beezley v. Olson,* 129 Colo. 406, 270 P. (2d) 758; *Nelson v. Centennial Cas. Co., supra; F. W. Woolworth Co. v. Peet, supra;* 38 Am. Jur. sec. 23, p. 665, sec. 97, p. 757; 65 C.J.S., sec. 51, p. 545.

No error was committed by the trial court in granting defendant's motion for directed verdict, and, therefore, the judgment is affirmed.