No. 17,811.

VICTOR H. BUCHHOLZ *v.* UNION PACIFIC RAILROAD COMPANY.

(311 P. [2d] 717)

Decided May 20, 1957.

Mr. G. E. HENDRICKS, for plaintiff in error.

Mr. E. G. KNOWLES, Mr. CLAYTON D. KNOWLES, Mr. RICHARD D. DITTEMORE, for defendant in error. Mr. W. R. ROUSE, Mr. F. J. MELIA of counsel.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is an action in tort for damages. The parties appear here in the same order as in the trial court and will be so referred to herein.

Plaintiff's complaint alleged that defendant railroad on February 4, 1952 "carelessly, negligently and recklessly drove or caused to be driven one of its trains into and against a Ford V8 truck owned by the plaintiff, at the intersection of its tracks with Cedar Street in the Town of Julesburg," Colorado; further that Cedar Street is a main public highway; that as a result thereof plaintiff's truck was wrecked and damaged in the amount of $2700.00 and that plaintiff was deprived of its use for two months to his damage in the sum of $200.00. No claim was made for the death of the driver who was killed.

Defendant's answer admitted the accident but denied that it was in any way careless, negligent or reckless, and denied plaintiff's damages. Defendant further alleged as affirmative defenses that plaintiff's father, William H. Buchholz, as agent of plaintiff, acting within the scope of his authority, was driving the truck at the time of the accident; and that said driver was negligent or guilty of contributory negligence. The defendant also set out a "cross-complaint" alleging that the driver recklessly and negligently drove upon the tracks of defendant and was there struck, damaging defendant's train in the amount of $1,000.00 and its tracks and signal in the amount of $500.00.

Plaintiff's answer to the cross-complaint admitted that plaintiff's father was the driver, denied all other allegations and set up the affirmative defense of contributory negligence.

Trial was to a jury. Following presentation of plaintiff's evidence the trial court directed a verdict for defendant on plaintiff's complaint, and on defendant's cross-complaint, and submitted the case to the jury on the question of defendant's damage only. The jury returned a verdict for defendant on its cross-complaint in

the amount of $397.77. Judgment was entered accordingly on April 26, 1955, with no costs awarded. Plaintiff's motion for a new trial was overruled and he is here by writ of error asserting it was error:

1. To take from the jury the question of negligence and contributory negligence.

2. To direct a verdict for defendant and to instruct the jury to find for the defendant as to its alleged damages.

3. To exclude plaintiff's evidence and offer of proof that the flashing light signal was not effective because it allegedly was either not working or was apparently not working due to the reflection of the early morning sun.

4. To exclude evidence and offer of proof as to alleged prior accidents and near escapes of others at the same site.

5. To exclude evidence and offer of proof of the alleged large volume of traffic both in trains and cars that allegedly used the crossing and that the warnings provided were not sufficient or reasonable therefor.

6. To exclude evidence and offer of proof of a witness who allegedly knew that the morning sunlight reflected in such a manner as to make it impossible to know whether the signal was flashing.

7. To admit defendant's Exhibits 2 and 3 although allegedly no witness could testify that either of them was correct except from hearsay.

For brevity we will consolidate the above alleged errors into four questions and answer them in a different order than presented.

*The first question to be determined is: Did the trial court err in refusing to admit certain of plaintiff's evidence, and in denying offers of proof?*

This question is answered in the negative.

These denials and offers were: Whether the flashing signal light was working or could be seen; evidence of alleged prior accidents and near escapes; the volume of

traffic and adequacy of warning devices; and testimony as to alleged ineffectiveness of the signal light.

Plaintiff's evidence disclosed that the accident occurred about 7:25 a.m. at a point where there were six railroad tracks; that the collision occurred at the northernmost track and involved a westbound train; that the flashing signal light involved was located between the switching tracks to the south and the main tracks to the north, and that the deceased driver, who was proceeding north, *had stopped* before entering his position of peril. Also that the driver was very familiar with the crossing and knew of the heavy train traffic, with trains running through the town at speeds of fifty-five to seventy miles per hour. It is clear from the record that even if the signal was not working, its failure was not a proximate cause of the tragedy. This is also true of the driver's intermittently obstructed vision to the main tracks caused by railroad structures and railroad cars which lay to his right. The driver knew of the hazards and recognized all of them when he stopped his truck *before* he entered upon the main west bound track. He had a duty to look and listen and to stop if a train was approaching. He also had a duty not to proceed until he could do so with reasonable safety. The evidence established that his truck, after stopping, moved forward at a speed of four to six miles per hour and that the point from which he could first see the train, without further sight interference, was approximately twenty-one feet from the fatal site, according to defendant's calculations and not less than nine feet according to plaintiff's evidence. It is clear that if the driver had looked carefully he would have seen the train approaching, and would and should have stopped in time to avoid a collision.

■ There was no evidence to show that a flashing light would have made any difference, for the driver had in fact stopped before proceeding upon the tracks; or that the alleged prior accidents or near escapes were under comparable conditions; or that there was an un-

usual volume of vehicular traffic to distract the driver or that the volume of such was heavy at the hour in question. All this evidence was properly excluded. We note there was no evidence that defendant had violated any ordinance or statute.

*The second question to be determined is: Was it error to direct a verdict in favor of defendant upon plaintiff's complaint?*

This question is answered in the negative. It was the duty of the trial court to direct a verdict against plaintiff upon his complaint. *Chicago, M. & St. P. Ry. Co. v. Bennett,* 181 Fed. 799. In so holding we note no evidence in the record to support the claim that defendant created a condition of apparent safety so as to mislead the driver or to lure him to his death, as plaintiff alleges.

It is inexplicable why this driver did not see the train approaching when he had stopped for that very purpose, and then entered upon a place known to be dangerous at a speed of four to six miles per hour, which even then would have enabled him to stop instantly. Such evidence shows a lack of due care and caution; was negligence, and a proximate cause of the accident.

In the early case of *C.R.I.&P. Ry. Co. v. Crisman,* 19 Colo. 30, 34 Pac. 286, this court said in reversing a judgment against the railroad:

"The degree of care to be used by a traveler in crossing a railroad is measured by the conditions surrounding the place of crossing, and where by reason of obstruction, his view of the railway track is shut off, it is his duty to exercise a higher degree of care than if the track is open to view; and the precautions to be taken must be such as are calculated to inform him of the fact whether a train is approaching or not."

Later in *Westerkamp v. C.B.&Q. Ry. Co.,* 41 Colo. 290, 92 Pac. 687, where negligence on the part of the railroad was admitted, this court said:

"From all the facts and circumstances, there is but one conclusion deducible, viz., he did not look; because, if he had, he could not have failed to discern the train approaching the crossing he was about to drive over. * * * Plaintiff not having looked for the approach of the train which struck his wagon, failed to exercise that degree of care which he should, and it is beyond dispute that such failure was the *proximate* cause of his injury." (Emphasis supplied.)

The case of *Headley v. D.&R.G.R. Co.*, 60 Colo. 500, 154 Pac. 731, cited by defendant, though different in its facts and involving admitted negligence of the railroad, nevertheless sets forth the duty of one who is crossing railroad tracks. There a verdict was directed in favor of the railroad and affirmed by this court saying:

"Moreover, the duty resting upon deceased to look and listen before advancing upon this track was a legal obligation, which he was bound to discharge, unless excused therefrom by some peculiar facts of the case. In other words, it is the imperative duty of one attempting to cross several tracks not to cease his watchfulness upon crossing the first or second in safety, but to continue to exercise his senses, and be observant of the obvious conditions until the crossing has been accomplished, unless the railroad company, through its acts, has produced a condition of apparent safety wherein reasonable men might have different views as to the necessity of looking and listening. Diligence, in order to be effective, must cover the whole field of danger, and where it is inherent in a continuing state of things the duty to exercise the care which the law imposes is a continuing obligation."

Further, in answer to the contention that the silent crossing bell implied that no train was approaching, the court said at page 515:

"While there are cases which hold that a silent signal bell or an open gate may operate to excuse a traveler from looking and listening for an approaching train, and the questions should be submitted to a jury under proper

instructions, the weight of authority and best-reasoned cases are to the contrary. It is a matter of common knowledge that electric bells, or even gates, are liable to be out of order, and common prudence would not permit one to rely solely thereon."

The same recognition of the duty of the driver has been set forth in other decisions of this court, such as *Nucci v. C.&S. Ry. Co.*, 63 Colo. 582, 169 Pac. 273, (involving contributory negligence) and *Great Western Ry. Co. v. Lee*, 70 Colo. 140, 198 Pac. 270. In the latter case a judgment in favor of Lee was reversed with directions to enter judgment for defendant, the court saying:

"We are of the opinion that the request [for a directed verdict] should have been granted. The driver of the automobile was fully aware of the danger at the point of the collision. He had frequently been over the road. He is supposed to have known what, if anything, there was to prevent his seeing the motorcar at a distance from the crossing."

The language quoted precisely fits the conditions and the knowledge of the plaintiff's father, who drove the truck upon the crossing in the face of obvious peril.

The case of *Gunby v. C.&S.R.R. Co.*, 77 Colo. 225, 235 Pac. 566, reaffirms the doctrine that one is presumed to see what is plainly visible and the doctrine of the *Headley* case that failure of crossing signals does not relieve one about to cross railroad tracks of the duty to look and listen.

In *Freeman v. Wright*, 81 Colo. 397, 255 Pac. 610, judgment for Wright against receivers of the Denver & Salt Lake R.R. Co. was reversed with directions to dismiss the case. The court said, regarding Wright's actions:

"* * * the plaintiff testified that because of trees and foliage he could not see, and did not see the engine till he got within five (sic) feet of the crossing; that he then tried to stop but was unable. This defeats him. He should have approached at such speed that he could stop after he saw the engine and if the situation was such

that he could not do that he should have stopped before he saw it and looked and listened."

Such was the duty required by law of the driver of the Buchholz truck in the instant case.

Later cases reaffirming the principles and the cases cited above are *Interstate Motor Lines v. Neal,* 116 Colo. 242, 179 P. (2d) 665; *C.&S. Ry. Co. v. Barth,* 117 Colo. 17, 183 P. (2d) 549. Also see *Kutchma v. Atchison, T.&S.F. Ry. Co.,* 23 F. (2d) 183 for a full discussion of the duties of travelers crossing railroad tracks. That opinion points out that such tracks are a constant warning of danger and that train operators alone cannot protect persons on the highways who cross them, and that travelers know that they must stop for the train and not the train for them. The court quotes an earlier case saying: "In such circumstances (as those here involved) it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near, he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk."

As a matter of law the driver of plaintiff's truck, in the situation disclosed by the record before us, was negligent in proceeding as he did to cross the railroad tracks. This bars his principal from recovery.

Plaintiff contends that the policy of the law has been to delegate the determination of such questions as "negligence," "ordinary care," and "reasonable prudence" to the jury under proper instructions from the court. He cites as authority *Grand Trunk Ry. Co. v. Ives,* 144 U.S. 408, 417, 36 L. Ed. 485, and several other cases including *Arps v. City and County of Denver,* 82 Colo. 189, 257 Pac. 1094.

This is true as a bald proposition of law but the rule is not applicable under the facts disclosed by the record here. *Higgins v. Boulder,* 105 Colo. 395; 98 P. (2d) 996, and other cases cited by plaintiff in support of

this theory are inapplicable or have been misconstrued. Questions of negligence and proximate cause are for the court where the evidence, and the inferences to be drawn therefrom, is such that reasonable men, giving fair consideration thereto, must reach the same conclusion. See *Westerkamp v. C.B.&Q. Ry. Co.* and *Grand Trunk Ry. Co. v. Ives, supra.*

On a motion for nonsuit plaintiff's evidence is entitled to the most favorable construction that can be given it. So viewed the plaintiff here has failed to prove his case.

*The third question to be determined is: Was it error to direct a verdict in favor of defendant upon its cross-complaint?*

■ This question is answered in the affirmative. We hold that under the facts presented here it was a jury question as to whether the railway company was guilty of contributory negligence which would bar recovery on its counterclaim.

*The fourth question to be determined is: Was it error to admit defendant's testimony and its Exhibits 2 and 3 relating to damage to defendant's signal and train?*

■ This question is answered in the negative. The testimony of defendant's witness Kalk related to the price of a new switch stand and the labor to install it. Kalk was the section foreman in charge of the repairs and was required to account for materials and labor used. He was furnished a price list by the defendant and testified he used such list as well as the prices marked on the materials in arriving at the cost of the switch stand. It is immaterial that he did not know whether the defendant actually paid the listed prices for such materials. He was a supervisory employee required to keep records of the cost of materials and labor expended under his supervision. Such records and his testimony with respect thereto were properly received in evidence.

Objections to the introduction of defendant's Exhibits 2 and 3 were also properly overruled. These were typewritten statements of amounts relating to the costs of

defendant in moving the damaged engine to Omaha for repairs and the itemized cost of the repairs. Defendant's witness Mayer identified these as being correct summaries taken from regular business records kept under his supervision. Mayer was head clerk in defendant's accounting department. As supervisor he did not personally make the book entries nor the summaries but he did check them for accuracy.

In any large enterprise the bookkeeping is a function handled by many persons and in the case of railroads at many places. It is not reasonable nor necessary to require the production of the original entries of each transaction concerned in damage to a railroad or other large enterprise with numerous accounts and it is probably impossible to have each of the entries identified by the person who originally made them. The sworn testimony of a proper supervisor that certain facts are shown by the corporate records, over which he has supervision, is competent evidence. Also, written, properly identified, summaries of such records may be received. This is in harmony with the intent of Rule 43 (f) R.C.P. permitting secondary evidence of a writing in certain cases. This rule provides in part: "(5) When the original consists of numerous accounts or other documents which cannot be examined in court without great loss of time and the evidence sought from them is only the general result of the whole" then evidence of the contents of a writing other than the writing itself may be offered in evidence. In other words, summaries of complicated, burdensome or voluminous original records prepared by competent persons may be offered in evidence as the only practicable way of receiving such proof. This court has recognized such practice as proper. See *McDonald v. McFerson,* 80 Colo. 4, 249 Pac. 496. This rule is not harmful to the opposing party since by proper request and procedure when necessary, he can examine or subpoena original records which he contends are in conflict with the evidence so admitted. Use of pre-trial

and other procedures under the rules enable a party to determine in advance whether to subpoena such original records for use at the trial.

The judgment entered upon the directed verdict in favor of defendant upon plaintiff's complaint is affirmed. The judgment upon the directed verdict in favor of the defendant upon defendant's cross-complaint is reversed and the cause remanded with directions to grant a new trial upon the issues presented by the cross-complaint and the affirmative defense thereto.

Mr. Justice Frantz, Mr. Justice Hall and Mr. Justice Knauss dissent.

Mr. Justice Frantz dissenting:

I am impelled to dissent. It seems to me that the law enunciated by the majority of this court in effect holds that the driver of a motor vehicle crosses railroad tracks at a public crossing at his peril; that evidence of cautionary measures taken by such a driver over the tracks is of no avail, and does not make the question of whether he acted as a reasonably prudent man would have acted under the circumstances one for resolution by the jury.

Buchholz sued the railroad company to recover damages for the value of a truck demolished at a crossing collision in Julesburg, Colorado, and for loss of the use of a truck for more than two months. His complaint charged the defendant with negligence, which was denied. Besides asserting the affirmative defenses of sole and contributory negligence on the part of the plaintiff, the defendant filed a counterclaim for damages to its train, tracks and signal, said to have been occasioned by the negligence of plaintiff. Issue was taken on the negligence alleged in the counterclaim, to which was also addressed affirmative defenses asserting sole and contributory negligence on the part of the defendant.

At the conclusion of plaintiff's proof, the defendant moved for a directed verdict in its favor on plaintiff's complaint, grounding said motion on the proposition that the evidence showed as a matter of law that the driver

of plaintiff's truck was guilty of *contributory negligence;* and moved for a directed verdict in its favor on its "cross-complaint," on the theory that plaintiff's agent in driving the truck did so negligently, and that such negligence was the proximate cause of the collision resulting in damage to defendant's property, and to submit the case to the jury solely on the question of the amount of damages sustained by the defendant.

The court granted the motions, finding that the truck was operated by plaintiff's agent, acting in the scope of his employment at the time of the collision; that said agent had traversed the crossing in question for many years; "that on the date of the accident complained of, the agent of plaintiff approached the tracks of the defendant at a speed not exceeding five miles per hour; that he stopped prior to attempting to cross the tracks; that there are signs indicating that a railroad crossing exists and indicating the number of tracks to be crossed"; that for a distance of some 9 feet north of a stop dump the driver of the truck had clear vision to the east, and a further distance, as indicated by plaintiff's Exhibit "A," of 12 feet 8 inches to the track in question; "that the driver of the truck, had he been acting with the degree of care to be exercised by one under similar circumstances could, by the exercise of reasonable care, have prevented the accident by reason of the familiarity of the driver of the truck with the conditions that prevailed; that because of the fact that he had crossed the tracks of defendant upon numerous occasions in years past, and for a good many years, he should properly be charged with a greater degree of care than were he a stranger to the situation; that had he exercised ordinary care for his own protection, the accident would not have occurred; that such failure to exercise such ordinary care contributed to, if not caused the accident to occur."

The trial court stated that it was "unable to escape the conclusion that such lack of care on the part of the driver of the truck immediately prior to and at the time

of the accident *constitutes contributory negligence* to a degree that precludes the plaintiff from recovery in this case"; and thereupon ordered the cause to be submitted to the jury upon the sole issue of damages alleged to have been sustained by the defendant. Damages were fixed by the jury, and judgment was entered thereon.

Plaintiff filed his motion for new trial. In overruling this motion the trial court in part stated that "There was some conflict in the testimony as to whether the flash signals were in operation but the employees of the defendant testified that they were and the witnesses for the plaintiff were somewhat uncertain as to whether or not said signals were operating just prior to the accident;" "the evidence further disclosed that the speed of the train was from 55 to 60 miles per hour which was the usual speed of such train through the town of Julesburg;" "that the driver of the truck had a clear vision of the track from a distance of about 100 feet to the south; that his vision became obstructed by a coal station and a pile of dirt until he reached a point approximately 21 feet south of the point of impact where he again had a clear vision of the track on which the train was approaching, and driving at a speed at which the evidence indicates he was driving at the time had ample opportunity to avoid a collision." The court concluded that the operation of the truck "not only contributed but was the sole cause of the accident and constituted contributory negligence as a matter of law." To reverse this judgment plaintiff is here by writ of error.

The facts, briefly stated, show that the father of the plaintiff was driving plaintiff's truck northward early on the morning of February 4, 1952, across the northernmost tracks of the defendant, as the same forms part of the crossing with Cedar Street in Julesburg, Colorado, when run down by a westbound streamliner of the defendant. The testimony as to the speed of the streamliner varied from 55 to 70 miles per hour. There was

agreement that the speed of the truck was between four and six miles per hour.

Admittedly, the father was the agent for his son, the plaintiff, in the operation of the truck; was familiar with the crossing in question; and at the time of the accident was hauling a load of grain into Julesburg.

Highway 51 becomes Cedar Street in Julesburg. There is much traffic coming into and going out of Julesburg on this highway. Cedar Street lies in a northerly and southerly direction, and is intersected by three tracks of the defendant lying in an easterly and westerly direction. The southernmost tracks are used for switching purposes; the tracks next north to the switch tracks are used by eastbound trains; and the northernmost tracks are used by westbound trains. There is a "stub track" between the switch tracks and the tracks used by eastbound trains, somewhat elevated, the elevation becoming greater as it nears Cedar Street. A mound of dirt, several feet high and conical in shape, is at the end of this "stub track," to keep coal cars from going off the end of the track. This mound is immediately east of Cedar Street and to the northwest, near its base, is the signal light, intended, when flashing, to warn those about to enter upon the tracks for either eastbound or westbound trains that a train is approaching the crossing. In addition to this signal light there is a post south of the switch track upon which appear two signs visible to users of the highway, one containing the words "Railroad Crossing," the other "3 Tracks."

A large structure, containing coal chutes, is located 242 feet east of the crossing. The tracks for east- and westbound trains and the "stub track" are placed under this structure, and trains on these tracks pass under it. This structure forms an obstruction to the view of northward bound users of Cedar Street who look eastward for approaching trains. Witnesses testified that it would impede one approaching the crossing from the south from seeing westbound trains until such trains reached

the coal chutes. On the morning in question several loaded coal cars were standing on the "stub track," cutting off the view of the tracks to the east except for a short space between the dirt mound and the coal car nearest this mound.

Distances varied within which a traveler must be, under the circumstances existing that morning, in order to have an unobstructed view to the east of westbound trains. The sheriff testified that when one was within 12 feet of the tracks for westbound trains his eastward view would be unimpeded. Probably limiting this distance to 12 feet is the overhang of the standing coal car nearest the crossing. The engine of the truck extended ahead of the driver of the truck four to five feet, and this fact together with the overhang of the locomotive brought the zone of danger even nearer.

There was testimony that a number of trains, passenger and freight, traversed these tracks in the course of each day. Several of these trains were streamliners which pass through Julesburg without stopping, and the train involved in the collision was one of them.

From the evidence it appears that plaintiff's father stopped the truck south of the tracks for east- and westbound trains before proceeding to cross them, and that the truck was struck by a westbound train as it was astraddle the northernmost tracks. The bed of the truck was knocked from its chassis and came to rest 12 feet southwest of the point of impact; the remainder of the truck was carried westward 150 feet; and the streamliner came to a stop about one-half mile west of the crossing.

There was testimony that the signal was not flashing when the truck came to a stop and then started to cross the tracks; that the streamliner gave no warning of its approach; that it failed to slacken speed before the collision; and that it only took a few seconds from the time it came out from under the coal chutes until it struck the truck.

Contributory negligence necessarily presupposes other causative negligence. *Philbin v. Denver City Tramway Co.,* 36 Colo. 331, 85 Pac. 630. The correlative of contributory negligence is negligence. Hence, the trial court could not direct a verdict for defendant on the basis of contributory negligence of plaintiff, and determine as a matter of law that defendant was entitled to recover on its counterclaim. If there was contributory negligence, there was other negligence, and "where a disastrous wreck is caused by the joint negligence of all concerned," recovery for damages can be had by none. *Hogue v. Colorado & Southern Ry. Co.,* 110 Colo. 552, 136 P. (2d) 276.

But we go further in this case, for we find ourselves in disagreement with the trial court's determination that the evidence disclosed contributory negligence as a matter of law on the part of the operator of the truck. The remarks of the court in directing a verdict and in denying the motion for new trial reveal that the trial court viewed the evidence in its most unfavorable light toward plaintiff in passing upon defendant's motion for directed verdict. Its action in so doing is contrary to the oft-repeated pronouncement of this court that, in passing upon a motion for directed verdict "the court must consider the evidence in a light most favorable to the party against whom the motion is directed; his evidence must be taken as true, every controverted fact must be resolved in his favor, and the strongest inferences reasonably deducible from the most favorable evidence should be indulged in his favor." *Gossard v. Watson,* 122 Colo. 271, 221 P. (2d) 353; *Book v. Paddock,* 129 Colo. 84, 267 P. (2d) 247; *Nelson v. Centennial Co.,* 130 Colo. 66, 273 P. (2d) 121. Among the more noticeable choices between evidence unfavorable to plaintiff and that favorable to him are the following: the trial court found the speed of the train to be between 55 and 60 miles per hour, when there was testimony that it was going 70 miles per hour; it found that there was a point south of the tracks

for east- and westbound trains 21 feet from which vision to the east was clear, when there was evidence that one must be within 12 feet of the tracks for westbound trains to obtain an unobstructed view to the east; it found "some conflict in the testimony as to whether the flash signals were in operation but the employees of the defendant testified that they were and the witnesses for the plaintiff were somewhat uncertain as to whether or not said signals were operating just prior to the accident," when most of the evidence on this point was definite that the signal was not flashing, and uncertainty arose from witnesses who said they did not know if the signal was flashing — indeed, the court's statement that "employees of defendant testified that" the signals "were operating" is in error since the record shows that no employees of the defendant testified; it found that one witness who was "somewhat deaf heard the train coming and that the whistle sounded somewhat different," when the record shows that there was internal conflict in his testimony as to this matter, and, moreover, another witness testified that he did not hear any warning from the train as it approached the crossing.

Evaluating plaintiff's evidence and the implications flowing from it in manner most favorable to the plaintiff should constrain us to hold that plaintiff's proof met the test of legal sufficiency. A motion for directed verdict always raises the question of the legal sufficiency of evidence to sustain the affirmative of a proposition, whether it be a claim or defense. The party resisting the motion must have produced evidence which is sufficient in law to support his claim or defense in order to entitle him to have the matter considered by the jury. Evidence received in the course of the trial has a dual role to fulfill; it must be sufficient in two ways — sufficient in law and sufficient in fact. Whether the evidence is legally sufficient is a question for the court; whether factually sufficient is for the jury. *Thoe v. Chicago,*

*Milwaukee & St. Paul R. Co.,* 181 Wis. 456, 195 N.W. 407; *Nelson v. Centennial Co., supra.*

How may a trial court determine the question of the legal sufficiency of evidence in a case in order properly to rule upon a motion for directed verdict? By what standards must the evidence be considered for the purpose of ascertaining whether the facts adduced at the trial and the inferences fairly and reasonably to be deduced from them, admitted by the motion for directed verdict (*Parker v. Denver,* 128 Colo. 355, 262 P. (2d) 553), establish legal sufficiency requiring submission of the proposition to the jury?

Out of a welter of decisions have come a number of variable standards which often make it difficult for the trial court to determine whether the evidence in a case is sufficient in law to withstand a motion for directed verdict. A review of pronouncements will reveal a lack of a definite standard by which trial courts may be guided in ruling upon motions for directed verdicts.

The gradations of required proof begin with *Alamo Hotel Co. v. Toledo Co.,* 71 Colo. 577, 208 Pac. 476, in which there is intimation that any evidence, however slight it may be, in support of a claim or defense bars direction of a verdict. Other cases hold that where there is "any evidence" to sustain the affirmative of a proposition, an attack by motion will be unavailing. *Rimmer v. Wilson,* 42 Colo. 180, 93 Pac. 1110; *Whitehead v. Valley View Co.,* 26 Colo. App. 114, 141 Pac. 138. See *Servus Chain Stores, Inc. v. Arden Realty & Inv. Co.,* 106 Colo. 369, 105 P. (2d) 850. A variant of the rule stated in these decisions is the injunction that "only where there is an entire absence of testimony tending to establish the case that a nonsuit may be properly ordered or a verdict directed" by the trial court. *Robinson v. Belmont Co.,* 94 Colo. 534, 31 P. (2d) 918; *Williams v. Sleepy Hollow M. Co.,* 37 Colo. 62, 86 Pac. 337, 7 L.R.A. (N.S.) 1170, 11 Ann. Cas. 111.

At other times courts of review of this state have said

that if there is evidence tending to support a proposition a motion for directed verdict is not well taken. "It is settled in this state *as a rule of law* that if *there is evidence which* tends to establish plaintiff's cause of action or defendant's defense, it is error for the court to withdraw the case from the jury or to direct a verdict. It is not for the court to judge of the sufficiency of the evidence." (Emphasis supplied.) *Western Co. v. First Nat'l Bank,* 23 Colo. App. 143, 128 Pac. 476; *Lebanon M. Co. v. Cons. Rep. M. Co.,* 6 Colo. 371.

Under another test the trial court must ascertain if there is present in the case "any legal evidence" in order to deny the motion. "The jurors being the sole triers of fact, plaintiff is entitled to go to them *if he has any legal evidence.* The court cannot pass upon the weight thereof." (Emphasis supplied.) *Estate of Peters v. Peters,* 73 Colo. 271, 215 Pac. 128; *Gossard v. Watson, supra.*

Still another test is stated in *Selfridge v. Leonard-Heffner Co.,* 51 Colo. 314, 117 Pac. 158, Ann. Cas. 1913 B, 282, in which the court declared that "if there is *evidence which tends to establish* the plaintiff's cause of action and the defendant's defense, *sufficient, if uncontroverted,* to sustain the allegations of each party, it is error for the court to withdraw the case from the consideration of the jury, or to direct a verdict thereon." (Emphasis supplied.) See *McDaniels v. George Sell Baking & Con. Co.,* 68 Colo. 202, 187 Pac. 731; *Minnequa Co. v. Denver,* 67 Colo. 472, 186 Pac. 539; *Clune v. Mercereau,* 89 Colo. 227, 1 P. (2d) 101.

A number of cases hold that the introduction of substantial evidence tending to sustain the position of a litigant makes his cause invulnerable to motion. A typical statement of the rule is contained in *Rosenbaum v. Fueller,* 52 Colo. 638, 123 Pac. 648, in these terms: "In a cause on trial before a jury, *if there is substantial evidence tending* to establish a cause of action, or the defendant's defense, it is error for the court to direct a verdict, because it is not for the court to judge of the

sufficiency of the evidence." (Emphasis supplied.) See *Briggs v. Chamberlain*, 47 Colo. 382, 107 Pac. 1082, 135 Am. St. A. 234; *Singer v. Chitwood*, 126 Colo. 173, 247 P. (2d) 905; *Nelson v. Centennial Co., supra*.

In reviewing cases this court has on occasions spelled out sufficiency in law of evidence where it appears that a prima facie case or defense has been established. *Westwood v. Richards*, 109 Colo. 17, 122 P. (2d) 247; *Blankette v. Public Service Co.*, 90 Colo. 456, 10 P. (2d) 327; *La Fitte v. Fort Collins*, 42 Colo. 293, 93 Pac. 1098.

A test frequently applied is thus stated in the case of *In re Shell's Estate*, 28 Colo. 167, 63 Pac. 413, 53 L.R.A. 387, 89 Am. St. 181: "If the evidence, in the most favorable light in which it may reasonably be considered in behalf of contestants, shows that no undue influence was exercised by proponent, and if the case had been submitted to the jury upon that evidence and they had returned a verdict in favor of contestants the court would have been obliged to set it aside as manifestly against the weight of the evidence, — then the court might properly, in the first instance, direct the jury to find in favor of proponent." See also *Brent v. Bank of Aurora*, 132 Colo. 577, 291 P. (2d) 391; *Nelson v. Centennial Co., supra; Miller v. Farmers B. & T. Co.*, 82 Colo. 373, 260 Pac. 112; *Watson v. M. & P. P. Ry. Co.*, 41 Colo. 138, 92 Pac. 17, 17 L.R.A. (N.S.) 916; *Schwenke v. Union D. & R. Co.*, 12 Colo. 341, 21 Pac. 43; *Brown Bros. v. Potter*, 13 Colo. App. 512, 58 Pac. 785; *Posten v. Denver Tramway Co.*, 11 Colo. App. 187, 53 Pac. 391.

Probably the rule most frequently resorted to in passing upon the motion is that where "the question depends on a state of facts from which different minds may honestly draw different conclusions on the issue, the question must be submitted to the jury for determination. * * * 'We have repeatedly held that where facts are disputed or inferences therefrom are reasonably disputable, the question is one for the jury.'" *Robinson v. Belmont Co., supra; Nelson v. Centennial Co., supra;*

*Parker v. Denver, supra; Grand Junction v. Lashmett,* 126 Colo. 256, 247 P. (2d) 909; *Arps v. Denver,* 82 Colo. 189, 257 Pac. 1094; *Denver v. Hatter,* 68 Colo. 194, 188 Pac. 728; *Denver Tramway Co. v. Wright,* 47 Colo. 366, 107 Pac. 1074; *Nichols v. C. B. & Q. R. R. Co.,* 44 Colo. 501, 98 Pac. 808; *Rimmer v. Wilson, supra; Williams v. Sleepy Hollow M. Co., supra; In re Shell's Estate, supra; Colo. Central R. R. Co., v. Marten,* 7 Colo. 592, 4 Pac. 1118.

It is readily seen that there is confusion in declarations of this court on what constitutes evidence sufficient in law to defeat a motion for directed verdict. Without considering in detail the hairline differences of some of the standards and the greater degrees of difference of others, we point out the most obvious irreconciliability of these tests as it appears between the rule requiring submission of a proposition to a jury *if there is any evidence to sustain it,* and the rule that the court should direct a verdict for a party when an adverse verdict would be *so manifestly against the evidence that, if rendered, the trial court ought to set it aside on motion for new trial.*

It seems to us that there is a sound and logical course to pursue in ruling on such motions. The trial judge should approach the problem by searching the pleadings for the admitted facts, and then appraising the evidence introduced in support of the controverted allegations for the purpose of casting it in a form revealing its most favorable aspects in behalf of the party against whom the motion is directed, and in such view decide whether the evidence submitted shows more than a scintilla of evidence to support each disputed necessary element of the proposition asserted. Should he determine that there is more than a scintilla of evidence to support the disputed necessary elements, the proposition must be submitted to the jury for it to pass upon the factual sufficiency of the evidence.

When a verdict is directed, the judgment entered thereon is final; and direction by the court, in a proper case, is a strict legal right. *Gossard v. Watson, supra; Singer v. Chitwood, supra; Burenheide v. Wall,* 131 Colo. 371, 281 P. (2d) 1000. The cited cases indicate that the court should not apply the same test "in directing a verdict as in setting one aside." The result of directing a verdict and setting one aside is widely different, and not controlled by the same considerations, and this is true even though a motion for directed verdict and in the alternative for a new trial may be filed under Rule 50, R.C.P. Colo. Finality is the mark of the judgment on a directed verdict; a re-trial follows the granting of a new trial. Whereas the directed verdict rests on legal right, the motion for new trial involves the exercise of the judicial discretion of the court. This discretion should never be exercised in directing a verdict under the law which confides to juries, as triers of the facts, and not to courts, the determination thereof. Intimation to the contrary in *Nelson v. Centennial Co., supra; Brent v. Bank of Aurora, supra,* adding to the confusion already indicated, should be by this opinion discountenanced.

Consideration of the evidence in its strongest light, and of the most favorable inferences fairly and reasonably to be drawn from it, applying the standard we have outlined to determine the sufficiency in law of evidence to withstand motion for directed verdict, should require reversal of this case. We proceed to such consideration.

The driver of plaintiff's truck had stopped before proceeding to cross the tracks for east- and westbound trains. It was within the jury's province to infer that while the driver was stopped, he listened, and that he heard neither bell nor whistle. The record does not show in any conclusive way at what point the truck was when the streamliner came out from under the coal chutes, and whether the operator of the truck, going four to six miles per hour had time to stop his truck when the train

hove into sight. It was for the jury to determine the speed of the train, and if they believed it was going 70 miles per hour or better than 102 feet per second, that at such speed the streamliner would have covered the distance of 242 feet from the coal chutes to the crossing in a little more than two seconds.

The jury may have believed that vision to the east was unimpeded when the driver got within 12 feet of the track on which the westbound train was traveling; the jury had the right to resort to the nice calculations that the truck was four to five feet closer to the track at this point of observation by reason of the length of that part of the truck ahead of the cab in which the operator sat, and that the overhang of the train decreased the distance another foot or two; and from this narrowed vantage point of observation, with a train traveling at 70 miles per hour and a truck traveling 4 to 6 miles per hour (requiring reaction and braking distance on the part of the truck operator), the operator had a minimal view of the westbound train till it was so near that escape had been cut off.

We have already related other circumstances, such as the location of tracks, standing coal cars, coal chutes, a mound of dirt, as bearing on the ability to see eastward for westbound trains. From all these circumstances, the jury could infer that the defendant had created a situation by which the operator's faculty or sense of seeing was greatly limited. "A jury, but not the court, might say that faculties thus limited, he should have found some other means of assuring himself of safety before venturing to cross." *Pokora v. Wabash Railway Co.*, 292 U.S. 98, 54 S. Ct. 580, 78 L. Ed. 1149, 91 A.L.R. 1049. Having in mind all these circumstances the jury might hold that the operator of the truck was not guilty of contributory negligence, because, to some extent, he might have been assured in the thought that the defendant would not run its train at such a time and place and at such speed without sounding bell or whistle, and

without flashing the signal light. *Union Pacific Co. v. Larsen,* 66 Colo. 15, 178 Pac. 573. "Reliance on the signal of the flagman was the exercise of some care, but whether enough to constitute due care was for the jury. The signal, no doubt, lulled him into a sense of security." *Phillips v. Denver City Tramway Co.,* 53 Colo. 458, 128 Pac. 460, citing *D. & R. G. R. R. Co. v. Gustafson,* 21 Colo. 393, 41 Pac. 505. So the jury in this case might have said of the absence of flashings of the signal, if they believed testimony to the effect that the signals were not operating.

If we proclaim the rule to be that every driver approaching a railway crossing must stop his vehicle or have it under such control that he can stop it in time to avoid a collision at the peril of being held negligent as a matter of law without consideration of the circumstances which have led him into the place of danger, we will have compelled him to become his own insurer in every case of a collision without regard to the railway company's negligence, and thereby nullify common law principles long prevailing in this state.

"The obligations, rights and duties of railroads and travelers upon intersecting highways are mutual and reciprocal, and no greater degree of care is required of one than the other. True, the railroad has the right of precedence at such crossings; but both parties, in the exercise of their respective rights, are nevertheless required to exercise reasonable care in enjoying them — the one to avoid inflicting injuries, and the other to avoid being injured." *Nichols v. C. B. & Q. R. R. Co., supra.*

Since negligence conveys the idea of failure to take reasonable precautions for one's safety, inattention, inadvertence, thoughtlessness, *Millington v. Hiedloff,* 96 Colo. 581, 45 P. (2d) 937, we are hard put to say that as a matter of law plaintiff's father was guilty of contributory negligence, when the evidence shows that he stopped, and then proceeded slowly over the tracks.

These are the actions of a cautious person — of one who is attentive and heeding the circumstances. Viewed in any light under the record before us, the question of negligence and contributory negligence should have been submitted to the jury. Indeed, it may be seriously urged that under the circumstances appearing in this record the railroad train's speed of 55 to 60 or 70 miles per hour through a town and over a heavily traveled highway created a perilous condition for those users of the highway obliged to use the crossing.

We think the court erroneously excluded evidence of alleged prior accidents and near escapes at this crossing upon the theory that the proof must relate to identical conditions. This testimony was admissible for the purpose of showing that the crossing is an unusually dangerous one, and the only test it must meet in order to be admissible in evidence is that the conditions sought to be shown are "reasonably similar to those existing at the time of the incident in suit." *Missouri-Kansas-Texas Railroad Co. v. McFerrin* (Tex. Civ. App.), 279 S.W. (2d) 410. Likewise, error was committed in rejecting evidence of the volume of traffic using said crossing. Such evidence has a "bearing on the degree of care which [the railroad] should exercise, to show the general character, description, and use of the crossing at which the accident happened, such as to show its dangerous character and the railroad's knowledge thereof." 75 C.J.S. 139, §847.

MR. JUSTICE KNAUSS and MR. JUSTICE HALL join in this dissenting opinion.