No. 20,151.

Jerry W. Lee, et al., *v.* Missouri Pacific Railroad Company, etc., et al.
(381 P. [2d] 35)

Decided April 29, 1963.

180

Mr. JOHN R. WALL, for plaintiffs in error.

Messrs. PRESTON & ALTMAN, for defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

The parties appear here in the same order as in the trial court. We will refer to the plaintiffs in error respectively as Lee and as Trusty or as plaintiffs, and to the defendant in error Missouri Pacific as Missouri Pacific and to the other defendants in error as engineer and fireman or to the defendants in error collectively as defendants. Separate actions by the plaintiffs against defendants were consolidated for trial by order of court. Lee's complaint alleged that defendants so negligently operated one of the Missouri Pacific trains as to cause it to collide with an automobile driven by Lee, resulting in damages to him in the sum of $151,723.30.

Trusty, the surviving husband of Cora Jean Trusty, a passenger in the automobile being driven by Lee, alleged in his complaint that the negligent operation of the Missouri Pacific train caused the death of Cora Jean Trusty to the damage of him and of the three children of Cora Jean Trusty in the sum of $25,000.00.

The defendants' answer to each complaint admitted the accident, but denied negligence and alleged as affirmative defenses that the sole cause of the accident was the negligence of both Lee and Cora Jean Trusty or that Lee and Cora Jean Trusty were both contributorily negligent.

Trial was to a jury. Following presentation of plaintiffs' evidence, the trial court directed a verdict for all the defendants against both Lee and Trusty. Judgment having been entered thereon, plaintiffs are here on writ of error.

The evidence presented by plaintiffs was that at 6:35 P.M. on March 1, 1958, Lee was driving his car south on Booth Avenue in Pueblo County. Cora Jean Trusty, a guest of Lee having no right of control over the operation of the vehicle, was seated to Lee's right. Two east-west railroad tracks intersect Booth Avenue, the track of the Missouri Pacific lying to the south of the Santa Fe track and approximately 100 feet therefrom. Booth Avenue between these tracks at the time of the accident

was of rock and gravel and in need of repair. The Santa Fe track to the north is approximately six to seven feet higher than the track of the Missouri Pacific. The grade of Booth Avenue is such that one traveling south thereon must necessarily ascend an incline to reach the apex of the Santa Fe track and then immediately descend to the track of the defendant. A driver or passenger of an automobile traveling south cannot see a train on the Missouri Pacific track until the automobile reaches the top of the higher Santa Fe track and begins its descent to the Missouri Pacific track.

The evidence disclosed that Lee was quite familiar with this crossing and the physical conditions surrounding it, as he traversed it practically every day. Lee testified that on the date of the accident as he neared the Santa Fe track in the darkness he slowed his car, looked both ways and then ascended the incline at a speed of 20 to 25 miles per hour with his foot off the gas. As he reached the top of the Santa Fe track, he saw the lights of an oncoming diesel 200 feet to the west. He immediately applied his brakes, but was unable to stop in time to avoid being struck by the train. Lee was unable to state what, if any, sounds Cora Jean made when she saw the oncoming train. If she made any he did not hear her.

The engineer and fireman of the diesel involved in the accident were called as adverse witnesses by the plaintiffs. They testified that the train was proceeding at a speed of 30 miles per hour and had its whistle blowing and its bell ringing as it approached the crossing. Both men were familiar with the nature of the crossing. The engineer stated that it was a "bad" crossing, and the fireman testified as to the obstructions to the view caused by the elevated Santa Fe track. The engineer, sitting on the south side of the locomotive, never saw the automobile, while the fireman on the north side first noticed the car when it was 10 to 12 feet from the Missouri Pacific track. Lee and two addi-

tional witnesses who were close to the crossing at the time of the collision testified that they had heard neither whistle nor bell sounded by the train. The witnesses stated that they would have heard them had they been sounded. There were no signals or devices present to warn the traveler of an approaching train except the familiar cross-buck signal which gave notice of the crossing.

In approaching the problems presented by this writ of error, we must first determine whether there was sufficient evidence presented by the plaintiffs to make a jury question on the issue of the negligence of the Missouri Pacific and its engineer and fireman. Motions for directed verdict present a question of law and in deciding the motion the court must consider the evidence in the light most favorable to the party against whom the motion is directed; every fact supported by credible evidence must be resolved in his favor and the strongest inferences reasonably deducible from the most favorable evidence should be indulged in his favor. *Gossard v. Watson,* 122 Colo. 271, 221 P. (2d) 353; *Elliott v. Hill,* 148 Colo. 553, 366 P. (2d) 663.

There was evidence sufficient to support a conclusion by the jury that this was a particularly dangerous crossing and that there were no signals to warn one approaching the crossing that a train which they could not see was approaching. It is true that there is no statute in Colorado requiring a railroad company to maintain a special warning facility at a particularly dangerous crossing; but the rights of the general public and of a railroad company at a crossing of this kind are reciprocal and mutual and it is necessary that reasonable warning be given by a railroad company of the approach of its trains. That which constitutes reasonable warning depends upon the conditions and circumstances at the particular crossing. When all of the facts and circumstances here are considered together, men of reasonable minds might differ as to whether the exer-

cise of ordinary care and prudence required the railroad to install and maintain some special warning signal in view of the character of the crossing here, and thus a jury question on this point was presented. *Interstate Motor Lines v. Great Western Ry.*, 161 F. (2d) 968 (10th Cir.).

Moreover, there was evidence in the record that the defendants failed to provide even the limited degree of warning which would have resulted from the blowing of the whistle and the ringing of the bell on the locomotive, which, if believed by the jury, would warrant a finding of negligence as a matter of law under the physical circumstances of this crossing.

It is true that the fireman testified that he commenced ringing the bell and blowing the whistle at a distance 1320 feet from the crossing. On the other hand, three witnesses testified that they heard no whistle or bell although they were in a position to hear such sounds had they occurred. Such testimony, although negative in character, was of probative value and presented a jury question. We have said:

"The probative force of negative testimony depends largely upon circumstances. In some circumstances, its probative force may be so slight as to reach the vanishing point; in other circumstances, such testimony may be more persuasive than the positive testimony of some witnesses. It is only when it is so clear that such testimony has no probative value whatever that reasonable men would not differ in their conclusions with reference thereto that courts are justified in disregarding it on the ground that it does not rise to the dignity of evidence. * * * " *Colorado & S. Ry. v. Honaker*, 92 Colo. 239, 19 P. (2d) 759.

The witnesses testified that they were in such position to hear the sound of whistle or bell had they been given. The jury could, if it believed these witnesses, reasonably conclude that no bell or whistle was sounded as the train approached the crossing. There was suffi-

cient evidence presented from which a jury could find the defendants had not exercised reasonable care and prudence under the circumstances and conditions present at this crossing.

Having determined that there was sufficient evidence to go to the jury on the question of whether the defendants were negligent, we must pass to the question of whether there was contributory negligence on the part of Lee and of Cora Jean Trusty such as to compel the court, as a matter of law, to direct a verdict against both plaintiffs. We deal first with the question as it applies to plaintiff Lee, the driver of the car. The evidence established that Lee was very familiar with the crossing at which the accident occurred, traveling it in both directions practically every day for three or four years. On the night of the collision, as he approached the Santa Fe track, he was quite aware that another set of tracks lay in his path a short distance beyond. He was familiar with the surface and grade of the road. He knew that he would not be able to see an approaching train on the Missouri Pacific track until he was over the top of the Santa Fe rails. Because he had such intimate knowledge of the conditions surrounding the crossing, it was his responsibility to have his car under such control that, in the event he discovered a train approaching he could at the first moment he made such discovery be able to stop before reaching the track of the Missouri Pacific. His failure to have his automobile under such control was negligence directly contributing to the accident, and bars recovery by him. *Great Western Ry. v. Lee,* 70 Colo. 140, 198 Pac. 270. Although the defendants had a duty to exercise reasonable care at this crossing, Lee had a reciprocal duty, knowing the dangers present at this crossing, to drive his car at such a rate of speed as to be able to stop in time to avoid a collision upon discovering a train approaching on the Missouri Pacific track. *Chicago, R.I. & P. R.R. v. Crisman,* 19 Colo. 30, 34 Pac. 286; *Buchholz v. Union P. R.R.,* 135 Colo. 331,

311 P. (2d) 717; *Union P. R.R. v. Snyder,* 200 F. (2d) 388 (10th Cir.).

■ With respect to the claim based upon the death of the passenger Cora Jean Trusty, a different situation presents itself. It is admitted that Cora Jean was a passenger in the car, not engaged in a joint enterprise and having no control over the driver. Under such circumstances, the negligence of Lee could not be imputed to her. *St. Mary's Academy v. Solomon,* 77 Colo. 463, 238 Pac. 22; *Brakhahn v. Hildebrand,* 134 Colo. 197, 301 P. (2d) 347. If the defendants were negligent and their negligence was a proximate cause of the collision (and as we have stated there was evidence sufficient to go to the jury on that question), Cora Jean's claim could be defeated only if she failed to exercise such care and caution for her own safety as a reasonably prudent person would exercise under the same circumstances, and if such lack of care was a proximate cause of her death.

■ Obviously Cora Jean did not and could not see the Missouri Pacific train until the car in which she was riding reached the top of the rise on which the Santa Fe track was situated. Lee, the driver, testified that he saw the train at the very moment he reached the top of the track and immediately took action to stop his car. Cora Jean could not, at the time the train was first visible to her, have done anything which would have given Lee more warning than he already had which would have enabled him to avoid the accident. These facts distinguish the present case from *Willy v. Atchison, T & S.F. Ry.,* 115 Colo. 306, 172 P. (2d) 958. There the passenger had an unobstructed view and failed to see what was clearly visible. Whether Cora Jean failed to exercise such care for her own safety as would be exercised by a reasonably prudent person under the circumstances was a question for the jury, and the court erred in directing a verdict against those to whom the claim survived under the statute.

■ Plaintiffs also argue that the trial court erred in quashing a subpoena duces tecum issued under Rule 45 (b), R.C.P. Colo., directing the Missouri Pacific to produce a file covering an investigation of the accident by Bert W. Strnad, its investigator, at a deposition to be taken from the said Strnad. Missouri Pacific contends that a party seeking a subpoena duces tecum requiring production of documents by the other party at a deposition hearing must show good cause for the issuance of such a subpoena. We hold that under such circumstances, Rule 45 (b), R.C.P. Colo., must be read in conjunction with Rule 34, R.C.P. Colo., and good cause must be shown, 5 Moore, *Federal Practice,* 1722, §45.05 [2] (2d ed.). To meet this test the plaintiff in the motion for the issuance of subpoena duces tecum alleged, and, at the hearing on the motion to quash, proved by uncontradicted testimony that Strnad was a claims agent for the Missouri Pacific at the time of the hearing; that he investigated the accident, but that he could not testify or give a "coherent story about the results of his investigation" without first refreshing his memory from the file. Such testimony was sufficient to show good cause why the file of Strnad's investigation should be produced at the time of the deposition, subject to any protective orders the court might make concerning the use to be made of the file, and subject to any objections to specific questions asked of Strnad concerning the file. The court erred in quashing the subpoena duces tecum in light of the purposes for which the file was subpoenaed. This error can be of no benefit to Lee, however, since recovery by him is precluded by his contributory negligence as a matter of law.

The judgment is affirmed with respect to the claim of the plaintiff Lee and reversed with respect to the claim of the plaintiff Trusty and remanded to the trial court for further proceedings on the Trusty claim in accordance with the views herein expressed.

Mr. Justice Sutton not participating.