No. 21430.

Henry Louis Balloga, Emmitt P. Lynch, Missouri
Pacific Railroad Company, a corporation, a/k/a Mis-
souri Pacific Railroad, a corporation, a/k/a Missouri
Pacific Lines v. Phyllis L. Wyman and Pueblo Dairy
Exchange, Inc., a Colorado corporation.
(431 P.2d 866)

Decided September 25, 1967.

PRESTON, ALTMAN & PARLAPIANO, for plaintiffs in error.

LAURENCE A. ARDELL, LOUIS J. STUART, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE parties appeared in the trial court inverse to their position here on writ of error. Defendants were the fireman, engineer and the Missouri Pacific Railroad and will be referred to as the Railroad. Defendant in error, Phyllis L. Wyman, brought this action under the wrongful death statute as the sole surviving heir and widow of Leslie M. Wyman. He was the driver of a bulk milk tank truck which was owned by the Pueblo Dairy Exchange, Inc., another of the plaintiffs. Mrs. Wyman will be referred to as plaintiff, and the dairy company as Exchange. The deceased will be referred to as Wyman.

The action arose out of a crossing-collision between one of the Railroad's freight trains and an Exchange truck driven by Wyman. Trial was to a jury which found

the issues in favor of plaintiff and Exchange and awarded each of them damages. The Railroad brings the case here by writ of error.

Although the Railroad cites as error the court's giving of some instructions and its refusal to give others, we will consider only one point urged for reversal. It is the Railroad's contention that the record discloses evidence of negligence on the part of the deceased Wyman which was the sole and proximate cause of his injuries. In advancing this argument it is willing to concede, arguendo, that the question of its negligence may have properly been one for consideration of the jury; it asserts, however, that Wyman was contributorially negligent as a matter of law and that the court should have directed a verdict in favor of the Railroad.

The evidence concerning events before and at the moment of the collision consisted of the testimony of the engineer and fireman and of two persons giving negative testimony, *i.e.*, one didn't see the collision and one didn't see or hear it. In addition physical evidence surrounding the site of the collision was presented to the jury by testimony and photographs. Together they present no disputed facts. Plaintiff contends, however, that inferences drawn from the facts could lead reasonable men to differ as to whether Wyman was contributorially negligent, and that it was not error for the court to refuse to direct a verdict for the Railroad.

The collision occurred on a clear day at approximately 3 P.M. Wyman was first observed by the train crew driving on a divided highway No. 96 in a westerly direction toward Pueblo. The railroad tracks also run east and west. The Railroad's freight train, having a total of 70-odd cars, was also traveling in a westerly direction, heading into Pueblo. The extreme north and right-hand edge of highway 96, which is marked by wood barriers, is 131 feet from the south or the first of the two rails upon which the freight train was traveling. Immediately north of the highway is a 22 foot service or access road

which is separated from the main highway by the aforementioned barrier posts. From the extreme northerly or right-hand edge of the service road was an onion shed 67 feet north. It was 32 feet wide, measured from north to south. The onion shed was set back 71 feet from the center of a 22 foot wide loose dirt county road which traverses in a northerly direction leading from highway 96. The northern edge of the onion shed was 32 feet from the south or first of the two rails of the Railroad.

The fireman, Balloga, was acting as engineer and sitting at the controls on the right-hand side of the diesel cab. The only testimony as to the actions of Wyman was elicited from him and from the engineer, Lynch. Wyman made a right turn off highway 96 on to the county road and traveled in a northerly direction the aforementioned 131 feet to the point of impact. At the time he made his turn, the engineer and fireman, with minor variations as to their estimate of distance, testified that they were approximately a quarter of a mile east of the road crossing. They testified that they had passed the whistle post which is 1700 feet from the crossing and had given their first blast of the whistle at that point as required by regulations. Wyman disappeared behind the onion shed and then emerged therefrom again into the view of the Railroad crew when the train was approximately 500 feet from the crossing It was estimated that he was traveling approximately four or five miles an hour, and Balloga assumed he was going to stop. The train was traveling 50 miles an hour or approximately ten times as fast as Wyman and the Exchange truck. As Wyman was closing the 32 feet gap from the edge of the shed to the point of impact, both Balloga and Lynch stated that he did not look toward them, and Lynch began making short blasts on the whistle. The bell was also ringing and had been ringing for the distance of 1700 feet from the whistle post to the crossing. In addition, the headlight on the engine was burning. The emergency brakes on the train were

set immediately — 150 feet — before the impact, and the train traveled 2376 feet before coming to a stop.

The testimony was that the allowable speed of the train was 55 miles per hour, and a passenger train going into Pueblo would have a maximum speed of 79 miles per hour at the same point.

The testimony from Balloga and Lynch was elicited by the right of cross-examination under the pertinent rule. Two other witnesses were called by the plaintiff. One testified that he was approximately 100 feet from the point of impact, but with his back turned to the train. His attention was attracted by the erratic blowing of the train whistle, but before he could turn around he heard the impact. Another witness was operating a "beet loading scoop" at the east edge of a beet pile 15 feet north of the Railroad's tracks and 500 to 600 feet east of the county road. He testified that his machine was making such a noise that he heard neither the train whistle nor the sound of the impact. He also established that the pile of beets had a temperature a considerable number of degrees higher than the atmosphere of the air and caused the beets to emit a cloud of steam.

That Wyman drove on to the Railroad crossing at the point of impact, totally oblivious of the presence of the freight train coming down the track at 50 miles per hour, is conceded. Both the fact that the train crew testified that he did not look in the direction of the railroad train or from the fact that he did not make any effort at any point to apply the brakes to the truck, make this apparent. Plaintiff argues that it was for the jury to determine whether Wyman was excused from his duty to look, listen and stop if need be before driving across the railroad track: (a) by the presence of the onion shed, which temporarily obstructed his view; (b) by the noise created where the beets were being loaded; and (c) by the presence of the cloud of steam through which the engine emerged. The density of the steam and whether it was blown in the direction of the

Railroad's tracks is not established by any competent evidence.

■ We hold that there were no factors from which the jury could find and infer that Wyman was free from contributory negligence. His duty under the law is so plain as to admit of no excuse therefrom under the circumstances of this case. As this court stated in *Union Pacific v. Cogburn,* 136 Colo. 184, 315 P.2d 209:

"It is common knowledge, of which we take notice, that the point of intersection of a railroad and a highway is a point of danger. Moving trains collide with moving highway vehicles, moving highway vehicles collide with standing trains, moving trains collide with standing highway vehicles. *All* parties to this action are chargeable with this general knowledge and in approaching, crossing and stopping at such points must use such reasonable care and prudence as the conditions present require." (Emphasis added.)

One of the conditions present was the onion shed. It was so situated that Wyman, in the 32 feet he traveled after emerging from behind it to the tracks over which he crossed and was struck "amidship," had an unobstructed view of a train which at that point was approximately 500 feet away. In *Willy v. A.T. & S.F. Ry. Co.,* 115 Colo. 306, 172 P.2d 958, this court stated:

"* * * Assuming an obstructed view, it became plaintiff Elizabeth Willy's duty to exercise additional care and caution. * * *"

■ The same rule was announced in *Chicago, Rock Island & Pacific Railway Company v. Crisman,* 19 Colo. 30, 34 P. 286:

"The degree of care to be used by a traveler in crossing a railroad is measured by the conditions surrounding the place of crossing, and where, by reason of obstructions his view of the railway track is shut off, it is his duty to exercise a higher degree of care than if the track is open to view; and the precautions to be taken

must be such as are calculated to inform him of the fact whether a train is approaching or not."

This standard of care was also enunciated by this court in *Buchholz v. Union Pacific Railroad Company,* 135 Colo. 331, 311 P.2d 717.

Concerning the activity on the Santa Fe Railroad tracks and right of way in relation to the noise and steam, this court had for consideration a strikingly similar factual situation in *C. & S. Ry. Co. v. Thomas,* 33 Colo. 517, 81 P. 801, Our court stated:

"Counsel for appellee insist that the decedent was excused from looking and listening because the noise created by the power house would prevent his hearing the approaching train, and the building would have prevented him from seeing the train if he had looked. Under such circumstances it was his duty to resort to other means of ascertaining whether a train was approaching, and it was clearly his duty, after passing this obstruction, to stop, look and listen. Had he done so he would have seen the train in time to avoid the accident."

To illustrate a corollary situation, the ordinary and average residential street is approximately 32 feet wide. There is usually a 15 foot right of way from the crosswalk to the official edge of the street, therefore about another 16 feet to the center of the intersection. Automobiles are usually parked at the curb. Trees and bushes are sometimes on the parkway, *i.e.,* the 15 foot right of way. Automobiles are permitted to travel on such streets at a speed of 25 miles per hour; yet all persons are charged with the responsibility of observing approaching cars at such an intersection; and likewise, must be able to stop so as to avoid a collision with a car traveling into and across the intersection. In the distance of 32 feet Wyman had the duty to bring his truck to a stop before reaching the track. From *Werner v. Schrader,* 127 Colo. 523, 258 P.2d 766, we quote with approval the following language:

"Our Court has repeatedly held that, for a person to

look in such a manner as not to see what must plainly be visible, is of no more effect than if he does not look at all. We said in *Fabling v. Jones,* 108 Colo. 144, 114 P.(2d) 1100: "To have looked in such a manner as to fail to see what must have been plainly visible was to look without a reasonable degree of care and is of no more effect than if she had not looked at all.' See also, *Brickey v. Herring,* 96 Colo. 181, 41 P. (2d) 298; *Aaron v. Wesebaum,* 114 Colo. 61, 162 P. (2d) 232."

These cases and the reasoning therein apply to the case at bar. There is no more settled pronouncement of the law. This freight train should have been — and would have been — seen and heard by a reasonably prudent man. Wyman, apparently, neither looked nor listened nor stopped as required by the law. If he was gambling on crossing the tracks before the train arrived, he did so at his own risk.

The judgment is reversed and the cause remanded to the trial court with instructions to dismiss the complaint and enter judgment in favor of the Railroad.

Mr. CHIEF JUSTICE MOORE and Mr. JUSTICE HODGES concur.

Mr. JUSTICE PRINGLE concurs in the result.