No. 21821.

THE DENVER AND RIO GRANDE WESTERN RAILROAD
COMPANY *v.* ELIZABETH M. LIPSCOMB.
(437 P.2d 554)

Decided January 22, 1968.     Rehearing denied March 11, 1968.

T. A. WHITE, G. G. WALKER, JOHN S. WALKER, for plaintiff in error.

KRIPKE, HOFFMAN & FRIEDMAN, for defendant in error.

*In Department.*

508

Opinion by Richard E. Conour.*

Defendant in error, plaintiff in the trial court, brought this action against plaintiff in error, defendant below, to recover damages for personal injuries suffered by her as a result of a collision between her automobile and a locomotive operated by the defendant. The accident took place at a railroad crossing in Jefferson County. Plaintiff had judgment in the trial court, and defendant brings the case here to review the judgment entered against it on the verdict of a jury.

The collision in question occurred at about 5:20 P.M. on July 27, 1961, at a point where the main line of defendant railroad crosses 80th Avenue. The highway was a blacktop county road, not within the limits of any municipality. At the point of the collision, the road was 24 feet wide, and runs in a generally southeasterly and northwesterly direction. The single railroad track crosses the road at a slight angle at about the middle of a rather gentle S-curve. Mrs. Lipscomb resided in Boulder, and at the time of the collision was returning to her home from work, travelling alone in her car. The windows of the vehicle were closed, and the car radio was playing. There were no industrial or other noises in the area to interfere with her hearing the bell and whistle of the diesel locomotive, which were sounded commencing at a point at least a thousand feet westerly from the crossing and continued until, or just immediately before, the collision. The immediate area seems to have been a peaceful, quiet, rural neighborhood.

The plaintiff was proceeding northwesterly on the road, which slopes downward toward the track curving to the left, and then, a short distance before reaching the tracks, curves to the right. The track crosses the road about in the middle of this right curve. The crossing is clearly visible up the hill for a distance of approximately

*District judge sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

600 or 700 feet, and the cross buck railroad crossing signs about 30 or 40 feet from the track on each side of it are also visible from this distance. The road to plaintiff's left was not obstructed by anything. To her right the track was constructed on the side of the hill plaintiff was descending and was obstructed by the hill and some trees and weeds so that the track itself could not be seen to the right or northwesterly of the crossing, until plaintiff approached within approximately 100 feet of the track. However, the embankment on the northwesterly side of the track did not conceal the two connected locomotives, which were 14½ feet high and 110 feet long, the upper two or three feet of which could be seen above the weeds for some distance to the west of the crossing. From the cross buck sign on the easterly side of the crossing, the track to the northwest can be seen for several hundred feet to a point where it curves to the left and disappears behind a clump of trees. At this point the locomotives were in plain sight, had plaintiff chosen to look.

At the time of the collision the locomotive, which was returning to Denver after helping a westbound train as far as the Moffat Tunnel, was running at a speed of about 46 to 50 miles per hour. The evidence is uncontradicted that the air whistle was blown and continued to be blown for more than 1,000 feet before the locomotive reached the crossing. The bell was a'so ringing, and two powerful electric headlights on the locomotive were lighted.

Photographic evidence disclosed that Mrs. Lipscomb ran into the front step on the left side of the locomotive with considerable force. Her car was then spun around and deposited on the easterly shoulder of the road. She suffered serious injuries as a result of the collision. The road surface contained no skid marks evidencing any effort to stop the car, and plaintiff testified that she did not remember seeing the railroad crossing signs or the tracks. However, she also testified that she knew

that the crossing was there. The uncontradicted evidence was that the whistle on the engine could be heard for approximately a mile.

While the witnesses were not in agreement whether the weather was clear or overcast, all agreed that the collision occurred in broad daylight. Likewise, the witnesses were uncertain whether the road was dry or damp. At the top of the hill was a sign warning motorists that they were approaching a hill, and closer to the track was a "curve" sign, Mrs. Lipscomb testified that she did not remember seeing these signs, the track, the cross buck crossing signs, or the locomotives. Her speed at the time of the collision is not shown by the evidence, but the uncontradicted evidence shows that she made no effort to slow for the crossing. Her own testimony indicates that she was driving along the road oblivious of her surroundings.

In the light of this evidence, defendant moved for a directed verdict at the close of plaintiff's case, which motion was overruled. Defendant then renewed the motion at the close of its own case, which renewed motion was also overruled. The case was then submitted to the jury and a substantial verdict was returned for the plaintiff. Judgment was entered on the verdict and in apt time defendant moved for judgment notwithstanding the verdict and for a new trial, both of which motions were overruled.

Defendant assigns as error only two propositions, *viz*, (1) that the evidence failed to establish negligence on the part of the defendant, and (2) that the evidence established that plaintiff was guilty of contributory negligence as a matter of law. We will address ourselves to the second proposition since resolution of that issue renders unnecessary any consideration of the first. Even if we assume that defendant was negligent, which we do not decide, the conduct of the plaintiff makes her guilty of contributory negligence as a matter of law. It is apparent that she drove down the hill and into the

side of the locomotive totally oblivious of the presence of the locomotive coming down the track with its whistle blowing, its bell ringing and its headlamps lighted, approaching a railroad crossing she knew was there. She did not slacken speed or make any effort to slow down or stop. She did not hear the whistle and bell, perhaps because sounds emanating from her car radio interfered. She offers no reason for not hearing that which she should, in the exercise of ordinary care, have heard.

No witness testified that the engine bell and whistle were not sounded. No witness testified that they did not hear the bell and whistle. However, Mrs. Lipscomb testified that she did not *remember* hearing the bell and whistle. This is insufficient to create an issue of fact to be resolved by the jury. As a general proposition, the weight to be given negative evidence depends on the opportunities of the witness to observe or hear, and in some situations, such evidence creates a jury issue. *Lee v. Missouri Pacific Railroad Co.,* 152 Colo. 179, 381 P.2d 35; *Union Pacific Railroad Co. v. Shupe,* 131 Colo. 271, 280 P.2d 1115; *Colorado & Southern Ry. Co. v. Honaker,* 92 Colo. 239, 19 P.2d 759. However, this is not the situation here. Mrs. Lipscomb testified that she did not *remember* hearing the warning signals, which is not the equivalent of *not hearing* them. It is settled law that the testimony of a witness that he does not remember whether a certain event took place does not contradict positive testimony that the event did take place. *Tennent v. Leary,* 81 Ariz. 243, 304 P.2d 384; and *Bender v. Roundup Mining Co.,* 138 Mont. 306, 356 P.2d 469, are only a few of the decisions supporting this rule.

Plaintiff contends that she was excused from the exercise of ordinary care because of the presence of numerous trees on both sides of the track to her right, being the direction from which the locomotive came; also, weeds along the track and the embankment on the

upper side of the track, this embankment being referred to as an "escarpment." The photographic evidence fails to disclose any escarpment which would prevent the whistle and bell from being heard by any motorist keeping even a perfunctory lookout and giving reasonable attention to his or her surroundings. The railroad grade appears to have been cut out of the side of the hill, leaving the normal contour of the slope undisturbed, and which cut was not high enough to conceal the upper portion of the locomotive proceeding along the track near the crossing. Mrs. Lipscomb testified that there were no sounds in the area, but presumably she did not refer to her radio, which she said was always on.

As a matter of law the evidence establishes contributory negligence on the part of Mrs. Lipscomb. We reached this conclusion in our recent pronouncement in *Balloga v. Wyman*, 163 Colo. 558, 431 P.2d 866, and arrive at the same conclusion here. In that decision it was contended that the decedent was excused from his duty to look, listen and stop if need be before driving across the track by the presence of a shed which temporarily obstructed his view, by the noise created by operation of a beet loader, and by the presence of a cloud of steam arising from a beet pile. With these facts before us, we said:

"* * * This freight train should have been — and would have been — seen and heard by a reasonably prudent man. Wyman, apparently, neither looked nor listened nor stopped as required by the law. If he was gambling on crossing the tracks before the train arrived, he did so at his own risk."

This Court has repeatedly held that it is the duty of a motorist approaching a railroad crossing to exercise due care for his own safety by looking, listening, and stopping if necessary, none of which acts were done by plaintiff in this case. Had she exercised due care, she could have seen the locomotives approaching, since the

photographic evidence of the area demonstrates that from a distance of 100 feet from the crossing, the track could be seen for some distance to the northwest, from which direction the engines were approaching. Had she kept her vehicle under control, she could have stopped in time to avoid the collision. To the contrary, she drove heedlessly onto the crossing, seeing and hearing nothing, although she knew the crossing was there. As was said in *C. R. I. & R. R.R. Co. v. McFarlin,* 336 F.2d 1 (10th Cir.), she could not "shut the view from her eyes or the sound from her ears and be relieved of her duty."

Even assuming that the crossing was obstructed by trees and weeds, the plaintiff was not relieved of her duty to operate her vehicle in such manner as to be able to stop if necessary. Her own conduct bars recovery. In *Freeman v. Wright,* 81 Colo. 397, 255 P. 610, involving a situation similar to that here under consideration, we said:

"Plaintiffs in error claim that defendant is shown to be guilty of contributory negligence. We think they are right. The case cannot be distinguished from *Great Western Ry. Co. v. Lee,* 70 Colo. 140, 198 Pac. 270. There it was held that plaintiff was negligent because he approached within 40 feet of the track at a speed that rendered it impossible for him to stop before he reached the crossing. So here the plaintiff testified that because of trees and foliage he could not see, and did not see the engine till he got within five (sic) feet of the crossing; that he then tried to stop but was unable. This defeats him. He should have approached at such speed that he could stop after he saw the engine and if the situation was such that he could not do that, he should have stopped before he saw it and looked and listened.

"That he was wrong about his inability to see until so near the track is proved by the photographs in evidence, but his case is not thereby helped because it

still conclusively appears that he did not keep such control of his machine as is required by *Great Western Ry. Co. v. Lee, supra.* . . ."

■ This Court has consistently held for nearly seventy-five years that a traveler approaching a railroad crossing must use such degree of care as the circumstances may require for his own safety, and if the crossing is obstructed, must use a higher degree of care. In *C. R. I. & P. Ry. Co. v. Crisman,* 19 Colo. 30, 34 P. 286, we said:

"The degree of care to be used by a traveler in crossing a railroad is measured by the conditions surrounding the place of crossing, and where, by reason of obstructions his view of the railway track is shut off, it is his duty to exercise a higher degree of care than if the track is open to view; and the precautions to be taken must be such as are calulated to inform him of the fact whether a train is approaching or not."

■ This was one of our first expressions of the rule. Our latest is *Balloga v. Wyman, supra.* In the interim, we have rendered numerous decisions to the same effect, some of which are: *Union Pacific Railroad Co. v. Larson,* 153 Colo. 354, 386 P.2d 583; *Lee v. Missouri Pacific R.R. Co.,* 152 Colo. 179, 381 P.2d 35; *Buchholz v. Union Pacific Railroad Co.,* 135 Colo. 331, 311 P.2d 717; *Gunby v. Colorado & Southern Railroad Co.,* 77 Colo. 225, 235 P. 566. These are but a few of the cases which hold that one injured at a railroad crossing cannot recover if he fails to exercise reasonable care and lookout for his own safety. Here the plaintiff failed in the duty imposed upon her for her own safety, and she was guilty of contributory negligence as a matter of law, regardless of whether or not the defendant was negligent. The trial court should have granted defendant's motions.

The judgment is reversed and the cause remanded with directions to dismiss the plaintiff's complaint.

Mr. Chief Justice Moore, Mr. Justice McWilliams and Mr. Justice Hodges concur.