No. C-248

**Joe G. Romero v. The Denver and Rio Grande Western Railway Company, a Delaware corporation**

(514 P.2d 626)

Decided October 1, 1973.

Gerash, Gerash & Davis, Walter L. Gerash, Davies, St. Veltri

& Dikeou, H. Anthony Ruckel, for petitioner.

Ernest Porter, Kenneth D. Barrows, Mark J. Rubald, Eric Paul, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This action arose out of a railroad crossing collision between a car and a 54-car Denver & Rio Grande Western Railway Company (D. & R. G.) freight train. The plaintiff's complaint alleged that the railroad's negligence consisted of a failure to properly maintain the crossing and, alternatively, a failure of the railroad to give a proper warning by blowing a whistle or ringing a bell before the crossing was reached. The D. & R. G., in answering the complaint, denied the plaintiff's allegations and alleged affirmatively that the plaintiff was guilty of contributory negligence.

The case was tried to a jury. When the plaintiff rested his case, the D. & R. G. filed a written motion to dismiss alleging that the plaintiff failed to establish a prima facie case of negligence against the defendant and asserting that the evidence established contributory negligence of the plaintiff as a matter of law. The trial court granted the defendant's motion and specifically found that the plaintiff had not proved negligence on the part of the defendant, D. & R. G. and entered a verdict for the defendant. The trial court made no finding and did not rule that the plaintiff was guilty of contributory negligence. On appeal, the Court of Appeals, with one judge dissenting, affirmed the trial court and also ruled that the plaintiff was guilty of contributory negligence as a matter of law. *Romero v. D. & R. G.,* 30 Colo. App. 516, 497 P.2d 704 (1972). We granted certiorari to review the decision of the Court of Appeals and now reverse and remand with directions that the plaintiff be granted a new trial.

## I.
## Facts

The defendant's train ran into the plaintiff's car at a railroad crossing on February 27, 1965, at approximately 2:00 p.m. The railroad crossing is located near Minturn, Colorado, where the county road to the Minturn dump crosses the D. & R. G. tracks. The approach to the crossing was unmarked on the side from which the plaintiff approached, although a crossbuck existed on the other side of the tracks, approximately thirty feet from the crossing. Romero and his brother-in-law, Don Chacon, had driven to the Minturn dump and were on their way home at the time the collision took place. Romero's car approached the railroad crossing, which was located at the bottom of a downgrade, at a speed of between four and five miles per hour. The road was snow-packed and icy and both sides of the road were lined with high snowbanks. The evidence is in conflict as to the height of the snowbanks, but it is undisputed that a car such as the plaintiff's, when approaching the railroad crossing, would have the driver's view of an oncoming train cut off by the snowbanks at various points along the road. In an effort to resolve the question of visibility, numerous photographs of the scene were taken shortly after the collision occurred and were introduced into evidence, over the plaintiff's objection. The relevancy of some of the photographs is disputed by the plaintiff because the camera was not held at windshield level when the pictures were taken and some question exists as to whether the photographs accurately depicted what the driver of a car would see if he were driving past the same point on the road. However, the photographs do indicate that a railroad train, at approximately 200 feet from the crossing, would be visible from certain portions of the county road.

Romero testified that he did not see the train on the day of the accident before the impact. The driver of the car, Chacon, was killed in the collision, and there is no way of knowing whether he saw the train or even looked for a train

before he reached the crossing. The brakeman on the train, who was seated twelve feet above the tracks, testified that when the train was some 300 feet from the crossing, he saw the car at a distance of approximately 150 feet from the crossing. He said that he "hollered" a warning to the engineer when he first sighted the car, but that the engineer did not respond. He also said that when the train was less than 100 feet from the crossing, he saw Romero's car emerge with its wheels skidding from behind the snowbank approximately nineteen feet from the tracks. He yelled then to the engineer that, "We are going to hit him." The engineer then applied the train's emergency brakes. The car slid into the railroad tracks and was stuck in that position when it was struck by the train.

The brakeman also testified that at the moment of impact, only seconds after the car had stopped sliding, it appeared that the driver of Romero's car was attempting to back the car away from the track. Both the engineer and the brakeman testified that the train's total stopping distance was nearly 700 feet, and that the design of the brakes on the train was such that the train's speed of thirty miles per hour was not reduced before impact occurred.

The evidence was in dispute as to whether the train's whistle was sounded before the collision occurred. The engineer and brakeman both testified that the train's whistle was blowing continuously for a distance of 800 to 1,000 feet before the crossing. However, the plaintiff offered the testimony of a woman who lived approximately three blocks from the crossing, and she said that she did not hear the train's warning whistle prior to the collision. Another witness was called by the plaintiff who was even closer to the crossing at the time of the collision, and he testified that he did not hear a warning whistle. Romero suffered severe head injuries in the collision and could not recall what happened immediately prior to the impact but said that he did not hear the train's warning whistle.

II.
The Prima Facie Case

Romero argues that he established a prima facie case and that the trial court committed reversible error when it granted the defendant's motion to dismiss and entered judgment for the defendant. He contends that the evidence of negligence was in conflict and that the trial court invaded the fact-finding province of the jury and denied him the right to have the jury determine the factual issues by dismissing the case.

The defendant's motion was labeled as a motion to dismiss but was, in effect a motion for a directed verdict. C.R.C.P. 50(a). Therefore, the trial court was governed by the law relating to directed verdicts. When the trial court granted the defendant's motion, it determined as a matter of law that no cognizable conflict existed in the evidence and that no inferences could be reasonably drawn from the evidence which would establish negligence. *Little Thompson v. Strawn,* 171 Colo. 295, 466 P.2d 915 (1970). A trial judge may only invade the fact-finding province of the jury in the clearest cases. *Little Thompson v. Strawn, supra; Blount v. Romero,* 157 Colo. 130, 401 P.2d 611 (1965). As we said in *Nettrour v. J. C. Penney Co.,* 146 Colo. 150, 360 P.2d 964 (1961):

"In passing upon a motion for a directed verdict the trial court must view the evidence in the light most favorable to the party against whom the motion is directed. Every reasonable inference to be drawn from the evidence presented is to be considered in the light most favorable to such party. A motion for directed verdict can only be granted where the evidence, when so considered, compels the conclusion that the minds of reasonable men could not be in disagreement and that no evidence, or legitimate inference arising therefrom, has been received or shown upon which a jury's verdict against the moving party could be sustained. *Brent v. Bank of Aurora,* 132 Colo. 577, 291 P.(2d) 391; *Gray v. Turner,* 142 Colo. 340, 350 P. (2d) 1043."

When a plaintiff makes out a prima facie case, even though the facts are in dispute, it is for the jury, and not the judge, to resolve the conflict. *Little Thompson v. Strawn,*

*supra; Lee v. Missouri Pacific Railroad,* 152 Colo. 179, 381 P.2d 35 (1963); *Nettrour v. J. C. Penney Co., supra; Gordon v. Clotsworthy,* 127 Colo. 377, 257 P.2d 410 (1953).

In this case, five witnesses testified on the issue of whether the train's warning whistle was blowing as it approached the crossing. The jury could properly find that the railroad was negligent if no warning whistle was sounded. *Colorado and Southern Railway Co. v. Honaker,* 92 Colo. 239, 19 P.2d 759 (1933). Even though the defendant offered direct testimony by its employees that the whistle was blowing, negative testimony was produced to prove that witnesses who were in a position to hear the train whistle did not hear the warning whistle. The plaintiff's negative evidence was sufficient to create a jury issue of negligence. *Colorado and Southern Railway Co. v. Honaker, supra.*

Moreover, the evidence before the court which established the relative positions of the automobile and the train within the time frame in question is less than conclusive. The brakeman testified that he could see the car from his high vantage point when the car was approximately 150 feet from the crossing, but there is no evidence as to what part of the car he could see. It is also not clear that the plaintiff or the driver of his car could see the train at the same point. Even the brakeman's testimony indicates that as the car approached the crossing, the driver's view of the track would become progressively worse, until at some unknown point the driver's view of an approaching train would be completely blocked. In our view, reasonable minds could differ on the visibility of the train by the occupants of the Romero car and on the issue of negligence. Since conflicts in the evidence existed on the two primary negligence issues, the trial court erred in granting the motion to dismiss and in directing a verdict for the defendant.

### III.
### Contributory Negligence

Although the trial court did not reach the issue of contributory negligence, the Court of Appeals ruled that Romero was contributorily negligent as a matter of law. The

Court of Appeals directed that Romero was contributorily negligent because the record established that:

"The train was clearly visible to [the driver] and plaintiff from the time they were within 150 feet of the track, except perhaps for the last 25 to 50 feet of their approach."

*Romero v. D. & R. G. W. RY., supra.*

Our analysis of the record causes us to conclude that the Court of Appeals resolved a disputed issue of fact. As a result of the terrain and the snow and the relative movement of the train and the Romero car, it is not at all clear from the evidence that the driver or Romero could see the train at any particular point along the road before the crossing was reached. The Court of Appeals erred in concluding that, since the brakeman from his twelve-foot-high vantage point could see some portion of the Romero car, it necessarily follows that the driver of the car could see the train. Inasmuch as last clear chance was pleaded and a conflict exists in the evidence as to contributory negligence, the question necessarily was for the jury. The Court of Appeals erred in deciding that the plaintiff was contributorily negligent as a matter of law.

Accordingly, we reverse the decision of the Court of Appeals and the trial court, and we direct that the Court of Appeals remand this case to the district court for a new trial on all issues.

MR. JUSTICE DAY and MR. JUSTICE HODGES dissent.

MR. JUSTICE DAY dissenting:

My dissent is principally confined to point III of the majority opinion. I believe the Colorado Court of Appeals was correct in ruling that there was contributory negligence as a matter of law in this case. I would, therefore, affirm the Court of Appeals' decision.

MR. JUSTICE HODGES authorizes me to state that he joins me in this dissent.